**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 91-8271

---

FLAVIO O. RAMIREZ,

Plaintiff-Appellee,

VERSUS

ALLRIGHT PARKING EL PASO, INC.,

Defendant-Appellant.

---

Appeal from the United States District Court
For the Western District of Texas

(July 7, 1992)

Before GOLDBERG, JONES, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Allright Parking El Paso (Allright) appeals a $234,343.55 judgment entered after a jury verdict finding it liable to Flavio Ramirez (Ramirez) for age discrimination under the Age Discrimination in Employment Act (ADEA) and for intentional infliction of emotional distress under Texas law. Allright challenges the denial of its motions for a directed verdict, judgment notwithstanding the verdict (JNOV), and new trial based on the sufficiency of the evidence. We affirm the jury's verdict regarding the ADEA claim, but finding the evidence insufficient

reverse their verdict regarding the intentional infliction of emotional distress claim.

## I. FACTS

Because Allright is challenging the sufficiency of the evidence we will recite the facts in the light most favorable to Ramirez. Allright employed Ramirez from 1961 until 1989. Over that time, he received several promotions, which culminated in his promotion to general manager of Allright's El Paso operations in 1986. As general manager, Ramirez reported to Aaron Hardgrave (Hardgrave), who was president of Allright's El Paso operations. In 1988, Allright promoted Kevin Matocha (Matocha), who was 22 years of age, to Regional Vice President. Shortly after Matocha's promotion, Hardgrave retired, and Allright replaced him with George Corse (Corse), who was 27 years of age. Ramirez remained the general manager and reported to Corse. After Corse took over, he called Ramirez into his office and told him that he had two more years with the company and then they were going to retire him. In January of 1989, Allright fired Ramirez and hired Scott Tinley, who was 22 years of age, as his replacement. At the time Allright fired Ramirez, he had no warnings or reprimands in his personnel file, and just two months prior had received a pay raise. After his firing, Ramirez and his son requested a meeting with Matocha, at which Ramirez's son asked Matocha if he was aware of the ADEA in order to let him know that there were other options available if the matter could not be settled. As a result of the meeting,

Allright agreed that it would hire Ramirez back in a supervisory capacity and at his "old salary."[1]

On January 23, 1989, Allright reinstated Ramirez as a supervisor, but with a loss of seniority and at salary of $538 bimonthly rather than $585 as was agreed too by the parties. Shortly after he was reinstated, Allright demoted Ramirez to duty as a parking lot attendant, where it required him to work longer hours than the other attendants and work more weekends than the other supervisors. In September 1989, Tinley approached Ramirez and told him that he was switching him to an hourly wage and requiring him to punch a time clock. Ramirez refused to accept the hourly wage or punching a time clock, and Tinley fired him.

## II. PROCEDURAL HISTORY

In October 1990, Ramirez sued Allright in state court alleging that it violated the ADEA and various state tort laws. Allright removed the case to the United States District Court for the Western District Court of Texas. At trial, Allright moved for and the district court granted a directed verdict on all the pendant state claims, however, later it partially withdrew its ruling and permitted Ramirez to proceed with his ADEA claim and his intentional infliction of emotional distress claim. The jury found for Ramirez on both claims, awarding him $23,760 in back pay and $23,760 in liquidated damages on his ADEA claim, and $300,000 in mental anguish damages on his emotional distress claim. After

_____

[1] Ramirez's "old salary" was the bimonthly salary of $585 that he was receiving prior to his November, 1988 pay raise.

3

the jury's verdict, the district court entered judgment for $347,520. Allright filed a motion for JNOV and, in the alternative, a motion for new trial and motion for remittitur. The district court denied Allright's motion for JNOV and motion for new trial conditioned upon Ramirez filing a remittitur for $200,000. Additionally, the district court awarded Ramirez front pay of $62,362, attorneys' fees of $20,387, and costs of $4,074. Ramirez filed a remittitur for $200,000, and on May 17, 1991, the district court vacated its prior judgment and entered judgment for Ramirez for $234,343.55. Allright appeals that judgment.

### III. DISCUSSION

Allright contends that its motions for directed verdict, JNOV, and new trial were improperly denied because there was insufficient evidence for the jury to find that it intentionally inflicted emotional distress upon Ramirez or that it discriminated against him based on his age in violation of the ADEA. When reviewing motions for directed verdict and JNOV:

> [T]he Court should consider all of the evidence-not just that evidence which supports the non-mover's case-but in the light and with all reasonable inferences most favorably to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). A motion for new trial is reviewed under a different standard, and

4

will not be overturned unless there is a clear showing of an abuse of discretion.  Reeves v. General Foods Corp., 682 F.2d 515, 519 (5th Cir. 1982).

A.  Intentional Infliction of Emotional Distress Claim

Under Texas law, the tort of intentional infliction of emotional distress consists of four elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's action caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe.  Dean v. Ford Motor Credit Co., 885 F.2d 300, 306 (5th Cir. 1989) (citing Tidelands Auto Club v. Walters, 699 S.W.2d 939, 942 (Tex. App.-Beaumont, 1985, writ ref'd n.r.e.).

Allright contends that there is insufficient evidence to support the jury's finding that its actions toward Ramirez were extreme and outrageous, which is an essential element of Ramirez's claim.  This court recently defined what is extreme and outrageous conduct in Dean v Ford Motor Credit Co., 885 F.2d 300 (5th Cir. 1989), where it stated:

> liability for [outrageous] conduct has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . . . . Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

Dean (citing Restatement (Second) Torts Section 46, Comment d.) at 306.

5

To support his position that Allright's actions rise to that level, Ramirez cites to the recent decision of this court in Wilson v. Monarch Paper Co., 939 F.2d 1138 (5th Cir. 1991).  In Wilson, an elderly employee sued his employer for violation of the ADEA and for intentional infliction of emotional distress under Texas law. The evidence produced by the employee at trial showed that: (1) his employer assigned his duties to a younger person; (2) the company president refused to speak to him in the hallways so as to harass him; (3) the company's long range plans expressed a desire to move younger people into sales and management positions; (4) the company's president wanted to replace him with a younger person; (5) other mangers would not work with him; (6) he did not receive his work assignments directly from the company president; (7) he was not offered a fully guaranteed salary to transfer; (8) his employer demoted him to the position of entry level warehouse supervisor; (9) his supervisors referred to him as old; (10) his immediate supervisor prepared a sign stating "Wilson is old," and "Wilson is a goldbrick"; and (11) the company filed a counterclaim against him.

The court found that all of the employer's above listed actions were within the realm of an ordinary employment dispute, and, in the context of the employment milieu, were not so extreme and outrageous to be properly addressed outside of the plaintiff's ADEA claim.  Wilson at 1145.  The court stated that "what takes this case out of the realm of an ordinary employment dispute is the degrading and humiliating way that [the plaintiff]  . . .  was

6

stripped of his duties and demoted from an executive manager to an entry level warehouse supervisor with menial and demeaning duties." Id. The evidence in Wilson showed that the employer transferred the plaintiff, who was the former vice-president and assistant to the president, to the warehouse where his primary duties were housekeeping chores, mainly sweeping the warehouse and cleaning up after the other employees in the warehouse cafeteria after lunch.[2] The court simply held that the employer's intentional and systematic actions to humiliate the plaintiff, who had a college education and 30 years of executive experience, by requiring him to do menial, janitorial duties was extreme and outrageous. Wilson at 1145.

In the present case, in contrast to the facts in Wilson, there is nothing elevating Allright's actions above those involved in an "ordinary employment dispute," and into the realm of extreme and outrageous, which is what Texas law requires to state a claim for intentional infliction of emotional distress. In support of his claim that Allright's actions were extreme and outrageous, Ramirez points to the following facts: (1) Allright replaced Ramirez with Tinley, who was 22 years of age; (2) Matocha advised Ramirez's son that Ramirez was a good worker, but that Matocha needed younger, more energetic employees; (3) Ramirez lost his seniority; (4) Matocha agreed to rehire Ramirez as a supervisor at his same salary, but in spite of that agreement, Matocha placed Ramirez as

_____

[2] Wilson spent 75% of his time performing these janitorial type duties.

7

a parking lot attendant and at a reduced salary; (6) Ramirez was required to take orders from employees that he had previously supervised; (7) Ramirez was required to work more hours than the other attendants and more weekends than the other supervisors; (8) Tinley told Ramirez that he would be put on an hourly wage and required to punch a time clock; and (9) Tinley fired Ramirez after he refused to punch a time clock, and after he refused to accept an hourly position.

Those actions by Allright, while perhaps illegal and discriminatory, are insufficient to support a finding of extreme and outrageous conduct under Texas law because Allright did not subject Ramirez to the intentional and systematic degradation and humiliation that was present in Wilson. The evidence in the present case shows that although Allright demoted Ramirez to a parking lot attendant, he continued to receive a supervisor's salary and continued to wear his uniform designating him as a supervisor. Also significant is that the duties (parking cars) Allright required of Ramirez were basic duties that all parking lot attendants were required to perform and were duties typical of the primary business of Allright, whereas, in Wilson the janitorial duties that the employer required of the plaintiff were not basic duties that all entry level supervisors were required to perform and were not typical of the primary business of the employer. In addition, the duties that Allright required Ramirez to do as an attendant were not menial or demeaning, but were duties that Allright required its other supervisors to do on occasion, and,

8

indeed, were duties that Allright had often called upon Ramirez to do himself before his demotion. As noted by this court in <u>Wilson</u>, "except in the most unusual cases . . . [an employer's creation of unpleasant and onerous work conditions] is not the sort of conduct, as deplorable as it may sometimes be, that constitutes extreme and outrageous conduct." <u>Wilson</u> at 1143.

In a final argument, Ramirez contends that this court's holding in <u>Dean</u> supports his claim. In <u>Dean</u>, the plaintiff's employer subjected the plaintiff to a litany of offensive and discriminatory acts that this court held were insufficient to support a finding of extreme and outrageous conduct.[3] The act of the employer that this court held took the case from the realm of an ordinary employment dispute and into the realm of outrageous conduct was that the supervisor of the employee intentionally placed checks in the employee's purse to make it appear that she was a thief, or to put her in fear of being charged criminally for theft. <u>Dean</u>, at 307. In the present case, Allright is not guilty

_____

[3] In <u>Dean,</u> this court found that the following conduct was insufficient to support a finding of extreme and outrageous conduct, which is necessary to support a claim for intentional infliction of emotional distress: (1) the employer told the plaintiff that "women don't usually go in that department," when she expressed interest in transferring to a higher paying position in the collection department; (2) the employer denied the plaintiff a transfer to the collection department, and instead selected a less qualified man; (3) the employer's attitude toward the plaintiff changed after she complained about discriminatory treatment; (4) the employer begin to transfer the plaintiff from desk to desk; (5) a co-worker testified that she believed the employer "was trying to set ... [the plaintiff] up;" (6) the employer required the plaintiff to do more work than the other clerks and subjected her to unfair harassment; and (7) the employer used special annual reviews (that only the plaintiff received) to downgrade her performance. <u>Dean</u> at 303-04.

9

of that type of reprehensible conduct, which the court classified as passing the "bounds of conduct that will be tolerated by a civilized society . . . . " Dean at 307. Simply put, the actions of Allright do not rise to the level of extreme and outrageous behavior that Texas law and our prior interpretations of Texas law in Wilson and Dean require to support a claim for intentional infliction of emotional distress.

B.  Age Discrimination in Employment Act Claim

Allright next contends that the district court improperly denied its motions for directed verdict, JNOV, and new trial because there was insufficient evidence for the jury to find that it discriminated against Ramirez based on his age in violation of the ADEA.  This court laid out the evidentiary procedure for analyzing an age discrimination claim under the ADEA in Bienkowski v. American Airlines,Inc., 851 F.2d 1503 (5th Cir. 1988).  In Bienkowski, the court stated:

> First the plaintiff must prove a prima facie case of age discrimination . . . . If the plaintiff succeeds, the burden of production shifts to the defendant to rebut the presumption of discrimination created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff. Finally, the plaintiff must prove that the defendant's reasons are pretexts for unlawful discrimination either by showing that a discriminatory reason more likely motivated the defendant or by showing that the defendant's reason is unworthy of credence.

Bienkowski, 851 F.2d at 1504-05.

In the present case, Ramirez made out a prima facie case for age discrimination by producing evidence that at the time Allright fired him: (1) he was 58 years old; (2) he had worked for 28 years

with Allright and had received favorable reviews; and (3) Allright replaced him with Tinley, who was 22 years of age and had less than two years of experience in the parking lot business. See Deloach v. Delchamps, Inc., 897 F.2d 815, 818 (5th Cir. 1990). Once Ramirez made out his prima facie case, the burden shifted to Allright to articulate a legitimate nondiscriminatory reason for firing him. Allright argued at trial that they fired Ramirez for poor job performance, not because of his age. The jury did not believe Allright, and found that its stated reason for firing Ramirez was merely a pretext for unlawful discrimination. There was sufficient evidence for the jury to reject Allright's explanation as shown by the previously delineated facts and the statements of Corse and Matocha, which included Corse's statement that he and Matocha were going to "retire the older employees," and Matocha's statement that he considered Ramirez to be "less energetic" and "less motivated" than the other employees. As this court said in Wilson:

> The jury heard both sides and the jury spoke. That is about all there is to say about age discrimination liability in this case. There were clearly two sides to this case. The jury believed . . . [the plaintiff] and his evidence; it did not believe [the defendant] . . . . Consequently, the jury's verdict on age discrimination is affirmed.

Wilson at 1146.

Likewise, the jury has spoken in the present case and decided to believe Ramirez and his evidence and not to believe Allright and its evidence. The jury has an inherent right, and indeed, a duty to reject evidence that they consider lacking in veracity and to

11

believe evidence that they consider trustworthy.  Because there was sufficient evidence for them to believe Ramirez's claim that Allright discriminated against him based on his age, we will not disturb their verdict.

Allright next contends that there was insufficient evidence for the jury to find that it "willfully" violated the ADEA.[4]  A violation "is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA."  Burns v. Texas City Refining, Inc., 890 F.2d 747, 751 (5th Cir. 1989).  The facts previously recited in this opinion, coupled with the statement made by Ramirez's son to Matocha asking him if he was aware of the ADEA were sufficient for the jury to find that Allright's violation of the ADEA was willful.

C.  Damages

Allright contends that the jury's award of $23,760 in back pay damages was excessive.  Generally, the jury's assessment of damages is entitled to considerable deference, and will be disturbed only when the award clearly exceeds the amount to which any reasonable man could feel the claimant is entitled.  Enterprise Ref. Co. v. Sector Ref. Co., 781 F.2d 1116, 1118 (5th Cir. 1986).  The plaintiff's expert economist testified that Ramirez suffered from $19,963 to $28,510 in back pay loss.  That testimony, which was uncontroverted by Allright, along with Ramirez's employment history

_____

[4]  Pursuant to 29 U.S.C. § 626(b), a finding of a willful violation of the ADEA entitles the plaintiff to liquidated damages in the amount of the back pay award.  See Burns v. Texas City Refining, Inc., 890 F.2d 747, 752 (5th Cir. 1989).

12

was sufficient evidence for the jury to reasonably believe that Ramirez sustained a back pay loss of $23,760.

Next, Allright contends that the district court's award of $62,362 in front pay, or future lost earnings, was excessive.[5] It is within the district court's discretion to determine the amount of the front pay award. Deloach v. Delchamps, Inc., 897 F.2d 815, 824 (5th Cir. 1990). The expert for Ramirez testified that Ramirez's front pay damages were $62,362. Allright did not introduce expert testimony, or any other evidence controverting that testimony, and therefore we hold that the district court did not abuse its discretion in awarding that amount.

For the foregoing reasons, we affirm in part, reverse in part, and remand to the district court for it to enter judgment in accordance with this opinion.

---

[5] It is within the discretion of the district court to award front pay in place of reinstatement, if it finds that reinstatement is impractical. Deloach v. Delchamps, Inc., 897 F.2d 815, 822 (5th Cir. 1990).