Kelvin WASHINGTON, Plaintiff,

v.

**HCA HEALTH SERVICES OF TEXAS INC. d/b/a HCA Spring Branch Medical Center, Defendant.**

**Civ. A. No. H–94–CV–1831.**

United States District Court,
S.D. Texas,
Houston Division.

May 19, 1995.

---

1. This Court would also note Southern Pacific counsel's compelling arguments at the hearing on this matter.

Joseph Y. Ahmad, Ahmad & Zavitsanos, Houston, TX, for plaintiff.

Nancy Lynne Patterson, Weil Gotshal & Manges, Houston, TX, Mark E. Edwards, Nashville, TN, for defendant.

## ORDER

ROSENTHAL, District Judge.

Pending before this court is defendant HCA Health Services' ("HCA's") motion for summary judgment, (Docket Entry No. 12). For the reasons stated below, the motion GRANTED.

## I. Background

Plaintiff Kelvin Washington ("Washington") worked as a Senior Accountant with HCA from September 26, 1991 until August 10, 1993, when his employment was terminated. Washington filed suit in the 127th Judicial District Court of Harris County, alleging that he was fired in violation of the Texas Commission on Human Rights Act ("TCHRA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* and Texas common law. HCA removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446.

Washington suffers from Adult Stills disease, a degenerative disease affecting the bones and joints. Washington alleged that HCA terminated his employment after he requested that he not be required to work more than 10 hours per day for five days each week. HCA's motion for summary judgment followed.

## II. The Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Under Fed. R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Leonard v. Dixie Well Serv. & Sup-*

*ply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Where the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.1988). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Leonard,* 828 F.2d at 294.

In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511; see *Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1088 (5th Cir.1990), *cert. denied,* 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). If reasonable minds can differ regarding a genuine issue of material fact, summary judgment should not be granted. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511.

## III. Disability Discrimination under the ADA

### A. Disability under the ADA

Washington argues that his Adult Stills syndrome qualifies him as a disabled

person under the ADA. HCA argues Washington is not disabled because Washington has not shown that his Adult Stills syndrome substantially limits his ability to perform a class of jobs or a broad range of jobs. (Docket Entry No. 13, p. 8).

The ADA defines disability as follows:

(A) A mental or physical impairment that substantially limits one or more major life activities in such individual;

(B) A record of such impairment; or

(C) Being regarded as having such impairment

42 U.S.C. § 12102(2). The regulations define "physical or mental impairment" to include any "physiological disorder . . . affecting one or more of the following bodily systems: neurological, musculoskeletal, . . ." 29 C.F.R. § 1630.2(h)(1). The regulations define major life activities to include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).

"Substantially limits" is defined as:

(i) Unable to perform a major life activity that the average person of the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j).

The following factors are to be considered when evaluating if somebody is disabled: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). The regulations also make clear that an individual is disabled if he or she requires the aid of medication to perform major life activities that the average individual can perform. *See* 29 C.F.R. § 1630.2(j).

When the major life activity at issue is working:

The term "substantially limits" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(ii). However, if an individual is substantially limited in any other major life activity, the individual need not establish that he is substantially limited in his or her work in order to qualify as "disabled" under the ADA. 29 C.F.R. § 1630.2(j) (Appendix) (1991).

Washington has provided summary judgment evidence that he has Adult Stills Disease, which was under control until 1993. (Letter from Samuel B. Pegran, M.D. dated June 1, 1993, Docket Entry No. 15, Exhibit B). Washington takes iodine, prednisone, maxide, and methotrexate. Without the medication, he would be confined to bed rest, unless the condition was in remission. (Affidavit of Kelvin Washington, Docket Entry No. 15, Exhibit A). The summary judgment evidence is that Washington's condition has not been in remission. He has required medication and surgery related to his condition. (Affidavit of Kelvin Washington, Docket Entry No. 15, Exhibit A).

Washington appears to meet the definition of "disabled" in the ADA because he has a degenerative bone disease which, if left unmedicated, would confine him to bed rest.

HCA argues that Washington is not disabled because the only restriction Washington's doctor has placed upon his work is that he be limited to a work day of 10 hours per day, five days per week. HCA cites *Marschand v. Norfolk and Western Railway Co.*, 876 F.Supp. 1528 (N.D.Ind.1995), for the proposition that this restriction does not qualify as an impairment of Washington's ability to work because Washington cannot show that it precludes him from more than a narrow range of jobs.

The *Marschand* court held that a train engineer who suffered from post-traumatic stress disorder after his train collided with a

car and killed all the occupants was not "disabled" under the ADA's definition. The court noted that although the plaintiff was limited from operating a train, there were a substantial number of other jobs which the plaintiff could perform. *Id.* at p. 1539.

*Marschand* and the circuit cases decided under the Rehabilitation Act that it relied upon are distinguishable. The plaintiff in *Marschand* alleged that his disorder interfered only with his work, and did not allege or provide evidence that it interfered with other major life activities. *Id.* at p. 1538; *see also Welsh v. City of Tulsa,* 977 F.2d 1415, 1419 (10th Cir.1992) (plaintiff not disabled where the numbness of fingers disqualified him from service as a firefighter); *Maulding v. Sullivan,* 961 F.2d 694 (8th Cir.1992) (chemist not disabled where chemical sensitivity prevented her from doing lab work); *Daley v. Koch,* 892 F.2d 212, 215–16 (2d. Cir.1989) (plaintiff who was disqualified from service as a policeman due to "poor judgment, irresponsible behavior and poor impulse control" not disabled). By contrast, Washington has provided evidence that his active Adult Stills Disease would leave him bedridden if left unmedicated. HCA applies the analysis that apparently should be used when an individual is substantially limited only in the major life activity of work. *See* 29 C.F.R. § 1630.2(j) (Appendix) (1991).

Although it seems anomalous to term a man who can work 50 hours a week "disabled," this court finds that under the regulations, Washington meets the ADA's definition.

**B. Discrimination on the basis of disability**

The ADA prohibits discrimination:

> against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8).

■ A plaintiff may establish a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, he may use the indirect method of proof set out for Title VII actions in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Grinstead v. Pool Co.,* No. CIV. A. 93–2320, 1994 WL 25515 (E.D.La.1994), *aff'd without opinion,* 26 F.3d 1118 (5th Cir.1994); *West v. Russell Corp.,* 868 F.Supp. 313, 316–17 (M.D.Ala.1994).

■ Under *McDonnell Douglas* a plaintiff must first make out a *prima facie* case by showing that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) despite his qualifications, a decision was made that adversely affected his employment; and (4) either his position was filled by someone outside of the protected group, or non-members received more favorable treatment because of their status as non-members of the protected class. *Norris v. Hartmarx Specialty Stores, Inc.,* 913 F.2d 253, 254 (5th Cir.1990); *EEOC v. Brown & Root, Inc.,* 688 F.2d 338, 340–41 (5th Cir. 1982); *Florence v. Frank,* 774 F.Supp. 1054, 1059 (N.D.Tex.1991).

■ Once a plaintiff has stated a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason" for its action that adversely affected the employee. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). While an employer need not prove the legitimate reason, it must produce some evidence to support it. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). If the employer produces any evidence "which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then the employer has satisfied its burden of production. *Id.* (emphasis in the original).

■ Once the employer has met its burden, the shifting burden scheme is aban-

doned and becomes irrelevant. The employer's intent is a question of fact, for which the plaintiff carries the burden of persuasion. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749. To show that the defendant's proffered reason was a pretext for discrimination, the plaintiff must offer evidence not only that the defendant's proffered reason was false, but also that discrimination was the real reason for the defendant's action. *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 298 n. 22 (5th Cir.1994).

■ Washington is a member of a protected class: this court has found that his Adult Stills Disease qualifies as a disability under the ADA. He has therefore fulfilled his burden of production on the first prong of the *prima facie* case.

Washington has also provided some evidence that he was qualified for his job as an accountant. He had a degree in accounting and, in 1992, before HCA was aware of his disability, had received acceptable, if mixed, performance ratings. The same performance rating contained notes that Washington required "extra time" to complete projects; that he was unable to complete balance sheet reconciliations in a satisfactory manner; that his analytical skills were weak; and that his "approach is mechanical and without thorough understanding." (Docket Entry No. 13, Ex. 10). The review stated that Washington "has not shown the level of Accounting knowledge or ability to pick up duties that is necessary of a staff accountant and especially a senior staff accountant with two previous years of HCA experience.... Accomplishments made in reconciling any balance sheet accounts were a result of constant monitoring and intensive work review." (Id.).

There is some question as to whether Washington has fulfilled his burden of production on the second element of the *prima facie* case—that he was qualified for the job. Nevertheless, for the purpose of this order, this court will assume that Washington has fulfilled his burden of production on the second prong of the *prima facie* case. HCA's justification for terminating Washington was not related to his performance. The supervisor who made the decision to terminate his

employment stated in her deposition that performance was not an issue Washington's termination in the reduction in force. (Docket Entry No. 15, Exhibit D, p. 18).

■ HCA has provided evidence that it terminated Washington as part of a hospital-wide reduction in force, and that hospital guidelines required staff layoffs in reverse order of seniority. The summary judgment evidence is that between January 1, 1993 and August 31, 1993, seventeen employees were laid off. Two of these employees were from the accounting department. In February 1993, a cash control clerk was terminated. Washington was terminated in August 1993. HCA has provided evidence that it had to choose between terminating Washington and the other senior accountant in his department. The choice was made to lay off Washington because he had less seniority than his co-worker. On that same day, eight employees in other departments were also terminated. (Docket Entry No. 13, Exhibit D).

Under *St. Mary's,* Washington must raise a fact issue not only that HCA's justification is pretextual, but also that Washington's disability was the real reason for his termination. *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d at 298 n. 22. Washington's affidavit states that HCA's Director of Human Resources, Carol Melville, told him that management was unhappy about receiving a letter from his lawyer in June 1993, requesting a 50–hour maximum weekly work schedule. (Docket Entry No. 15, Exhibit A). Washington also stated in his affidavit that after he gave his supervisor his doctor's instructions to limit his work, he was subjected to a work load in excess of 50 hours per week. Washington claims he was told that unless he worked the additional hours, he would not have his job. He also stated that another supervisor, Gigi Shum, told him "that she did not care about my health and her only concern was that work deadlines were met." (Id.).

Washington does not dispute that a reduction in force occurred. Nor does he dispute that the other candidate for layoff in his department had more seniority than Washington did. Washington offers no evidence

that HCA's proffered reason for his layoff was false. Washington's affidavit does state that "another person in our department had recently been hired" at the time of his layoff in August 1993. (Docket Entry No. 15, Exhibit A). However, there is nothing in the summary judgment record to show that this person replaced Washington or took his position. Washington has failed to raise a disputed fact as to whether HCA's stated reason for terminating Washington was pretextual and whether HCA terminated Washington on account of his disability. *See Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 959 (5th Cir.1993) (granting summary judgment against an ADEA plaintiff where the proffered reason for his termination was a reduction in force, and the plaintiff failed to provide evidence that the reduction in force was pretextual); *Coutu v. Martin County Board of County Commissioners,* 47 F.3d 1068, 1073 (11th Cir.1995) (granting summary judgment for the defendant in a Title VII case where the proffered reason was a reduction in force and the plaintiff did not provide any evidence of pretext).

HCA's motion for summary judgment on Washington's ADA claims is GRANTED.

## C. Washington's TCHRA claim

■ The Texas Supreme Court has observed that one of the purposes behind the TCHRA is the "correlation of state law with federal law in the area of employment discrimination." *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991). Accordingly, state courts look to federal law when deciding issues under the TCHRA. *Id.; see also Farrington v. Sysco Food Serv., Inc.,* 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Ewald v. Wornick Family Foods Corp.,* 878 S.W.2d 653, 658 (Tex.App.—Corpus Christi 1994, writ denied) (Dec. 8, 1994); *City of Austin v. Gifford,* 824 S.W.2d 735, 739 (Tex.App.—Austin 1992, no writ). Therefore, this court's holding with respect to the ADA also applies to Washington's TCHRA claims. HCA's motion for summary judgment on Washington's TCHRA claims is GRANTED.

## D. Retaliation for exercising rights under the ADA

■ In order to establish a *prima facie* case of retaliation under the ADA, Washington must establish that: (1) he engaged in activity protected by the ADA; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected act and the adverse employment action. *Grizzle v. The Traveler's Health Network, Inc.,* 14 F.3d 261, 263 (5th Cir.1994); *Jones v. Flagship Int'l,* 793 F.2d 714, 724 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

■ Washington has fulfilled his burden of production of providing a *prima facie* case. The letter from his attorney requesting reduced working hours and alerting HCA to his condition constitutes the protected activity. His termination was the adverse employment action. Evidence to support a causal connection is provided by his supervisor's statement that management was "unhappy" about the letter.

■ *St. Mary's Honor Ctr.* also applies to a retaliation claim. As discussed above, however, Washington has not provided evidence that would support a conclusion that HCA's stated reason for his termination—a staff reduction—is pretextual. HCA's motion for summary judgment on Washington's retaliation claim is GRANTED.

## E. Intentional Infliction of Emotional Distress

■ In order to recover for intentional infliction of emotional distress, Washington must establish the following elements:

(1) HCA acted intentionally or recklessly;

(2) The conduct was "extreme" and "outrageous";

(3) The actions have caused him emotional distress; and

(4) The emotional distress was "severe."

*Grizzle v. The Travelers Health Network, Inc.,* 14 F.3d 261, 269 (5th Cir.1994). *Ugalde v. McKenzie Asphalt Company,* 990 F.2d 239 (5th Cir.1993); *Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1375 (5th Cir. 1992); *Johnson v. Merrell–Dow Pharmaceu-*

*ticals, Inc.,* 965 F.2d 31, 33 (5th Cir.1992); *Wornick v. Casas,* 856 S.W.2d 732, 734 (Tex. 1993). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grizzle,* 14 F.3d at 269; *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 742 (5th Cir. 1993); *Sebesta v. Kent Elec. Corp.,* 886 S.W.2d 459 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

 Washington's allegations are insufficient to support his claim for intentional infliction of emotional distress. The "fact of discharge itself as a matter of law cannot constitute outrageous behavior." *Wornick,* 856 S.W.2d at 735 (citing *Reid v. Sears Roebuck & Co.,* 790 F.2d 453, 462 (5th Cir.1986)). *Twyman v. Twyman,* 855 S.W.2d 619 (Tex. 1993). Washington's supervisors' comments that if he did not work the longer hours expected of him, he would be fired are, as a matter of law, insufficient to support a claim for intentional infliction of emotional distress. *Compare Qualicare of East Texas, Inc. v. Runnels,* 863 S.W.2d 220, 222–23 (Tex.App.— Eastland 1993, n.w.h.) (thinly veiled death threats made in an effort to induce an employee to commit illegal acts were "extreme and outrageous").

This court GRANTS HCA's motion for summary judgment on Washington's claims for intentional infliction of emotional distress.

## IV. Order

HCA's motion for summary judgment on all of Washington's claims is GRANTED.