John **STEELE**, Plaintiff,

v.

**SGS–THOMSON MICROELECTRONICS, INC.**, Defendant.

**Civil Action No. 3:95–CV–2558–BC.**

United States District Court, N.D. Texas, Dallas Division.

April 15, 1997.

Edward Randolph Blackstone, Law Office of Edward R. Blackstone, Dallas, TX, Jacob Schwab Ginsberg, Law Office of Jacob Ginsberg, Dallas, TX, for plaintiff.

Brett Lee Myers, Akin Gump Strauss Hauer & Feld, Dallas, TX, Robert E. Luxen, Craig Alan McDougal, Crouch & Hallett, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

Before the Court is **Defendant's Motion for Summary Judgment**, filed February 11, 1997. Having read the pertinent pleadings, the Court **GRANTS** the motion for the reasons that follow.

## I. Background[1]

John Steele, an African–American, began working for Mostek Corporation, in 1975. SGS–Thomson Microelectronics, Inc. ("SGS"), a manufacturer of semiconductors for the microelectronics industry, acquired Mostek in 1987. Steele worked in various positions at the Carrollton production facility and continued there after SGS took over, ultimately becoming a manufacturing supervisor in 1991. In early 1993, Steele was a Manufacturing Supervisor assigned to the Fab 6–C Shift.[2] In March of 1993, Steele became the Manufacturing Supervisor for the Fab 4–B Shift. When Steele moved to the Fab 4–B Shift, William Fiegener became his supervisor. This lawsuit focuses on Steele's performance as a supervisor of the Fab 4–B Shift and the measures taken by

Fiegener in response to complaints about Steele's supervisory abilities.

On November 3, 1994, Steele filed a charge with the EEOC, alleging that SGS had discriminated against him because of his race by instituting disciplinary procedures against him. On November 10, 1994, SGS terminated Steele's employment. On December 7, 1994, Steele filed a second charge with the EEOC, alleging that SGS had retaliated against him for filing his November 3 discrimination charge. On October 25, 1995, Steele filed the instant lawsuit in district court, asserting claims under Title VII and 42 U.S.C. §§ 1981, 1983, and the state law claim of intentional infliction of emotional distress. On February 11, 1997, SGS filed the instant Motion for Summary Judgment.

## II. Analysis

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, the movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Id.; Little*, 37 F.3d at 1075.

1. These uncontested background facts are taken from Def.'s Mot. for Summ. J., filed February 11, 1997, and Pl.'s Resp. to Def.'s Mot. for Summ. J., filed March 7, 1997.

2. The Fab 4 and Fab 6 facilities manufactured microelectronic chips, or wafers, at the Carrollton plant.

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,'.. by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 871–73, 110 S.Ct. 3177, 3180, 111 L.Ed.2d 695 (1990); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir.1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir.1994)). Rather, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (*quoting* FED. R. CIV. P. 56(e)).

In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the non-movant. *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996)(per curiam); *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir. 1990). If the moving party seeks to establish the absence of a material fact through the submission of affidavits, depositions, admissions, or responses to interrogatories, the non-movant may not rely solely on mere allegations or denials. Rather, the non-movant must demonstrate the existence of an issue of material fact necessitating resolution by trial through similar evidentiary materials setting forth specific facts. FED.R.CIV.P. 56(e); *Lechuga v. Southern Pac. Transp. Co.*, 949 F.2d 790, 794 (5th Cir.1992).

### B. *Standards in Employment Discrimination Cases*

In employment discrimination cases, the Supreme Court has formulated an evidentiary procedure of shifting burdens. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993)(*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). First, the plaintiff is required to establish a *prima facie* case by demonstrating the elements required for the particular type of discrimination alleged. The plaintiff may use direct or circumstantial evidence to prove the claim. *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir.1994)(*citing United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983)). When the plaintiff meets this requirement, a presumption of discrimination arises that the defendant must then rebut by setting forth a legitimate, nondiscriminatory reason for the challenged action. *Id.* (*citing Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1478 n. 19 (5th Cir.1992), *cert. denied*, 507 U.S. 909, 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993)). Once the employer has met this burden of production, the employee's *prima facie* case dissolves and the plaintiff must prove that the employer's proffered reason is a pretext for the type of discrimination alleged. *Bodenheimer*, 5 F.3d at 957.

In a suit brought under Title VII, although the elements of each claim may differ, the ultimate burden rests upon the plaintiff to prove prohibited discrimination by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–12, 113 S.Ct. 2742, 2748–50, 125 L.Ed.2d 407 (1993); *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978). This burden of persuasion never shifts to the defendant. *Id.* With these standards in mind, the Court turns to an analysis of the plaintiff's discrimination claims.

### 1. 42 U.S.C. § 1983

■ In its Motion for Summary Judgment, SGS first argues that Steele has failed to state a claim under 42 U.S.C. § 1983. In his original complaint, Steele asserts that SGS treated him differently than white employees, thereby depriving him of his Constitutional right to equal protection and due process. SGS asserts that Steele has no cognizable cause of action under 42 U.S.C. § 1983 because SGS is a private corporation, not a state or federal government agency. Def.'s Mot. for Summ. J., Exh. 1 (Fiegener Aff.) ¶ 3.

■ Section 1983 provides that a person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any ... person within the jurisdiction [of the United States] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. In order to state a claim under section 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted under color of state law. *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir.1989); *Davis Oil Co. v. Mills*, 873 F.2d 774, 779 (5th Cir.), *cert. denied*, 493 U.S. 937, 110 S.Ct. 331, 107 L.Ed.2d 321 (1989). Thus, there is no section 1983 cause of action unless the alleged deprivation of rights was the result of conduct fairly attributable to the state. *Cinel v. Connick* 15 F.3d 1338, 1343 (5th Cir.), *cert. denied*, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994); *Davis*, 873 F.2d at 779.

In this case, there does not appear to be a dispute as to the status of SGS as a private corporation. Furthermore, Steele does not allege any facts tending to show that SGS functioned as a state actor during the events giving rise to this suit. *See Wong*, 881 F.2d at 202. Nor does Steele allege any facts tending to show a nexus between SGS's conduct and the state. *Id.* The Court therefore finds that SGS's motion for summary judgment should be granted as to Steele's section 1983 claims.

## 2. Title VII and § 1981 Claims

■ Title VII makes it illegal for an employer to discriminate in the terms, conditions or privileges of employment because of race. 42 U.S.C. § 2000e–2(a). Section 1981 states that all citizens enjoy the same contractual rights. 42 U.S.C. § 1981. When an employment discrimination plaintiff alleges causes of action under Title VII and section 1981, the court may use the same analysis and evidentiary standards in determining employer liability. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir.1996)(*citing Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363,

2377–78, 105 L.Ed.2d 132 (1989)); *Hamilton v. Rodgers*, 791 F.2d 439, 442 (5th Cir.1986).

As a threshold matter, a plaintiff alleging discrimination must establish a *prima facie* case of discrimination by showing: (1) that he was a member of a protected class; (2) that he was qualified for the position in question; (3) that he was discharged or suffered some other adverse employment decision; and (4) that he was replaced with someone who is not a member of the protected class. *Meinecke v. H & R Block*, 66 F.3d 77, 83 (5th Cir.1995); *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In other words, a plaintiff must show he was treated differently from similarly situated individuals and that there is a causal connection between his race and the adverse employment decision. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). This burden is satisfied if the plaintiff shows that the employer's actions can create an inference that, if those actions remain unexplained, they were more likely than not based on a discriminatory criterion. *Id.*

■ In its Motion for Summary Judgment, SGS first argues that Steele has failed to demonstrate a *prima facie* case of discrimination. In response, Steele offers summary judgment evidence supporting his allegations of race discrimination. Specifically, Steele points out that there is no dispute as to the fact that he is an African–American, that he was terminated, and that a white employee replaced him. Pl.'s Resp. to Def.'s Mot. for Summ. J., Steele Aff., ¶¶ 6, 26, 27; Steele also alleges that SGS treated white supervisors more leniently than African–American supervisors. Steele Aff, ¶¶ 6, 9, 11; Livingston Aff. ¶ 5. Finally, the summary judgment also shows that although SGS argues that Steele was terminated for poor job performance, he was nonetheless "qualified" to the extent that he met minimal general job requirements for the position of Manufacturing Supervisor. Pl.'s Resp., Exh A–C (Employee Appraisal); Fiegener Dep., pp. 83, 133.

Viewing the evidence in the light most favorable to the non-movant, the undersigned

finds that the plaintiff has established his *prima facie* case. In the summary judgment context, he need not prove his case, rather, he must only provide evidence that raises a genuine issue of material fact as to each element of the *prima facie* case. *Waltman v. International Paper*, 875 F.2d 468, 477 (5th Cir.1989). SGS, on the other hand, has failed to show an absence of proof sufficient for granting summary judgment.

In a summary judgment context, if the plaintiff meets the requirements of a *prima facie* case, a presumption of discrimination arises and the burden then shifts to the defendant to show a legitimate, non-discriminatory reason for the employment decision. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993). Upon doing this, the presumption of discrimination no longer exists and the *prima facie* case is extinguished. *Id.* In order to ultimately prevail in an employment discrimination case the plaintiff must then prove by a preponderance of the evidence that "the employer's reasons were not the true reason for the employment decision and that unlawful discrimination was." *Id.* at 957 (*citing St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 503, 113 S.Ct. 2742, 2745–46, 125 L.Ed.2d 407 (1993)).

■ Having found that Steele has met the requirement of showing a *prima facie* case of discrimination, the burden now shifts to SOS to show a legitimate, non-discriminatory reason for its employment decisions. SOS argues that Steele was terminated because of poor performance. Specifically, SOS argues that it discharged Steele for failing to follow his supervisor's directives, for failing to comply with SGS's attendance policies, and for failing to maintain discipline and control on his shift. In support of this contention, SOS offers the following testimonial and documentary evidence.

First, a 1993 Human Resources investigation of a harassment charge against Steele and a 1994 Performance Review both indicated that Steele's supervisory skills needed improvement. Def.'s Mot. For Summ. J., Exh. 3 (Bejsovec Aff.); Def.'s Mot. For Summ. J., Exh. 2 (Steele Dep.) at pp. 70–74 and exh. 4; Fiegener Aff. at ¶ 6. Second, Steele's supervisor, William Fiegener, states that Steele repeatedly failed to follow specific instructions relating to personnel management. Fiegener Aff. At ¶¶ 7–8, 12, 16–18; Steele Dep. at pp. 83–86, 91–92, 164–65, 168. Third, another shift supervisor reported that an employee under Steele's supervision was abusing the SGS overtime policy. Fiegener Aff. At ¶ 9, Steele Dep. at pp. 94–95. Fourth, Steele failed to notify Fiegener and shift personnel when he would be absent. Fiegener Aff. at ¶ 8; Steele Dep. at pp. 91–94. Fifth, Steele received two separate Performance Improvement Plans, on March 8, 1994 and September 29, 1994 respectively, detailing the issues described above. Fiegener Aff., exh. A, E.; Steele Dep. at pp. 79–80, 106, 109, 147–50, 155–56. Sixth, Fiegener was dissatisfied with. Steele's response to the first Performance Improvement Plan, and instructed Steele to enroll in SGS's Employee Assistance Program. Fiegener Aff. at ¶ 13, exh. B, C, D, Steele Dep. pp. 114–16, 120–21. Seventh, in August 1994, the Human Resources Department received an anonymous complaint about Steele's conduct in supervising Shift B. Fiegener conducted an investigation of these complaints. Bejsovec Aff. at ¶ 4, exh. B. Eighth, as a result of his investigation of the complaints, Fiegener issued the second Performance Improvement Plan. Fiegener Aff. at ¶¶ 14–15. Furthermore, Fiegener met with Steele weekly to discuss the plan and Steele's progress. In some instances Fiegener gave Steele direct instructions. After four weeks, Fiegener concluded that Steele neither carried out his instructions nor implemented his own solutions to the shift's personnel problems. Fiegener Aff., ¶¶ 15–18; Steele Dep., at pp. 149–50, 155–56, 161, 164–65. SOS terminated Steele on November 10, 1994. Fiegener Aff. ¶ 19. Thus, SOS has met its burden of stating a lawful reason upon which it based its decision to terminate Steele.

■ To prevent summary judgment, Steele must now present factual evidence that would allow a reasonable jury to find SOS's stated reasons are a pretext for discrimination. *St. Mary's*, 509 U.S. at 515–17, 113 S.Ct. at 2752, 125 L.Ed.2d at 422. In order to avoid summary judgment following a showing of a legitimate, non-discriminatory

reason for a challenged employment decision, a plaintiff must create a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer, and create a reasonable inference that race was a determinative factor in the employment decision. *St. Mary's*, 509 U.S. at 515–17, 113 S.Ct. at 2752, 125 L.Ed.2d at 422; *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 140–41 (5th Cir.1996)(*citing Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir.1996) (en banc)); *Marcantel v. Louisiana Dept. of Transp. and Development*, 37 F.3d 197, 200 (5th Cir.1994). A plaintiff may demonstrate that his employer's proffered reasons for termination are pretextual by showing that a discriminatory motive more likely motivated the employer, or by showing that the proffered reason is unworthy of credence. *Harrington v. Harris*, 108 F.3d 598, 605 (5th Cir.1997). The necessary evidence sufficient to meet this standard will vary with the facts and circumstances of each case. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir.1996).

In response to SOS's claim that it terminated Steele because of poor performance, Steele argues, in essence, that his performance was satisfactory and that Fiegener began to find fault with Steele's performance in order to terminate him. In support of this contention Steele offers generally positive performance reviews, including a review completed by his previous supervisor, and the 1993 Human Resources investigation report finding the harassment charge against Steele to be groundless. Pl.'s Resp. to Def.'s Mot. for Summ. J., (Steele Aff.), ¶¶ 3–5 and exh. A–D. Steele also argues that production on the B shift increased under his supervision. Steele Aff., at ¶ 14. Additionally, Steele offers affidavit testimony explaining his version of the disciplinary, attendance,

and performance plan issues. Steele Aff., at ¶¶ 8, 13, 17–25.

Based upon the evidence before the court, Steele has not met his summary judgment burden of showing a genuine issue of material fact for trial. The undersigned finds that Steel has failed to create a fact issue as to whether SGS's offered reasons for dismissing him are false. Steele does not appear to deny that he had difficulty maintaining control over his shift. Rather, he argues that it was a problem shift, that Fiegener had previously given him a favorable performance evaluation, and that finding fault with performance is "usually a prelude to termination." Steele Aff., ¶¶ 10, 16–17. In essence, Steele disagrees with SGS that his performance was unsatisfactory, challenges the factual basis for SOS's determination, and concludes that the performance issues were manufactured to justify terminating his employment. Nonetheless, Steele's explanations regarding the events giving rise to the Performance Improvement Plans, even if proven, are not sufficient to withstand summary judgment. The only issue relevant to the court's inquiry is whether SOS reasonably believed that Steele had lost control of his shift and that Steele was discharged for that reason.[3] *See Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir.1993). An employer may make an erroneous employment decision, so long as that decision is not made with a discriminatory motive. *Id.; Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

Furthermore, even if Steele has created a fact issue for trial on whether SGS's stated reasons for his discharge were the real reasons, he has nonetheless failed to show that race was the actual reason for his termination. Steele's only argument supporting his allegation of pretext is the assertion that SGS treats white employees differ-

---

**3.** Also pending before the Court is Steele's Motion for Continuance or Postponement of Judgment Pursuant to Rule 56(f). In the motion, Steele seeks a continuance so that he may obtain the signed affidavit of Brenda Montgomery. Montgomery is the work cell leader directly under Steele's supervision. Montgomery's unsigned affidavit states that, contrary to Fiegener's testimony, Steele did inform her that he would

not be coming into work on February 21 and 22, 1994. At best, Montgomery's testimony would establish that one of SGS's reasons for discharging Steele was based on incorrect information. As discussed previously, however, this court does not second-guess an employer's personnel decision, so long as the decision was not the result of a discriminatory motive.

ently for similar conduct. In support of this contention, Steele offers his own affidavit testimony, and the testimony of Ida Livingston, a production technician who worked on the B shift under Steele. Specifically, Steele contends that he was the only African–American supervisor under Fiegener and that a white supervisor who was placed on a Performance Improvement Plan was not terminated. Steele Aff., ¶¶ 6, 27. Furthermore, Steele contends that Fiegener reprimanded him for leaving the section for smoking breaks but did not similarly reprimand white supervisors. Pl. Resp. to Def.'s Mot. for Summ. J., (Livingston Aff.) at ¶ 5. In response to these allegations, SGS offers the Performance Improvement Plan issued to Jack Hunn. Def.'s Mot. for Summ. J., Exh. IF; Fiegener Aff. at ¶ 20. SGS argues that Steele is the only employee Fiegener ever placed on a second Performance Improvement Plan, that Hunn's performance improved after Fiegener issued the Performance Improvement Plan, and that Steele has failed to show that Hunn was treated favorably.

The employer will be entitled to summary judgment unless the plaintiff comes forward with evidence which, taken as a whole, would allow a jury to infer that the actual reason for the discharge was discriminatory. *Hall v. Gillman Inc.*, 81 F.3d 35, 37 (5th Cir.1996); *Grimes*, 102 F.3d at 143. The Fifth Circuit, sitting en banc, recently held,

> A jury may be able to infer discriminatory intent in an appropriate case from substantial evidence that the employer's proffered reasons are false. The evidence may, for example, strongly indicate that the employer has introduced fabricated justifications for an employee's discharge, and not otherwise suggest a credible nondiscriminatory explanation. By contrast, if the evidence put forth by the plaintiff to establish the *prima facie* case and to rebut the employer's reasons is not substantial, a jury cannot reasonably infer discriminatory intent.

*Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996)(en banc).

In this case, the summary judgment evidence before the court would not permit a jury to find an inference of discriminatory intent. Steele argues only that Hunn was white, that Hunn was placed on a Performance Improvement Plan, and that SGS did not dismiss Hunn. From this, he draws the conclusion that white supervisors were treated more favorably than black supervisors for similar conduct. Steele has offered no evidence to show that Hunn, like Steele, failed to improve according to the terms of his Performance Improvement Plan, yet was neither issued a second plan nor discharged. *See Ray*, 63 F.3d at 435. Thus, Steele has failed to make the necessary showing of racial animus. Without additional support, an employee's subjective belief that discrimination is the basis of an employment decision is not sufficient to survive summary judgment following an employer's adequate showing of a non-discriminatory reason for the action. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir.1995); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir.1991).

With regard to Steele's Title VII and section 1981 claims, SGS's Motion for Summary Judgment must be granted.

### 3. Intentional Infliction of Emotional Distress

 Finally, it its Motion for Summary Judgment, SGS argues that Steele has failed as a matter of law to establish a claim for intentional infliction of emotional distress, and the court agrees. Under Texas law, the tort of intentional infliction of emotional distress has four elements that the plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *MacArthur v. University of Tex. Health Center*, 45 F.3d 890, 898 (5th Cir.1995); *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993). This circuit defines extreme and outrageous conduct as conduct which is "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Dean v. Ford*

*Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989) (quoting Restatement (Second) of Torts § 46 cmt. d). Mere insults and indignities will not satisfy this standard. *MacArthur,* 45 F.3d at 898. Furthermore, in the context of employment disputes, conduct which is arguably illegal will not necessarily give rise to a claim for intentional infliction of emotional distress. *Id.; Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1375–76 (5th Cir.1992). Thus, conduct which is offensive but still within the "realm of an ordinary employment dispute" will not support such a claim. *MacArthur,* 45 F.3d at 898 (*quoting Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1144–45 (5th Cir.1991)).

The only evidence supporting Steele's intentional infliction of emotional distress claim is his deposition testimony that he has lost weight, that he has lost sleep, and that he is emotionally drained as a result of SGS disciplinary actions and his termination. Steele dep., pp. 196–98. Although this evidence indicates that Steele was distressed by his employment dispute with SGS, it is insufficient to establish a claim for intentional infliction of emotional distress. Specifically, Steele has failed to show the critical element of his claim: conduct on the part of SGS that was so extreme so as to be beyond all possible bounds of decency. Unfortunately, Steele's allegations are of a sort frequently raised in employment disputes. He has not, however, alleged any facts that this court could characterize as "atrocious" or "utterly intolerable in a civilized community." *See MacArthur,* 45 F.3d at 898. Thus, Steele has failed to carry his summary judgment burden on this claim.

### III. Conclusion

For the foregoing reasons, SGS's Motion for Summary Judgment is **GRANTED.**