NUMBER 13-00-095-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

 


WAL-MART STORES, INC., Appellant,


v.


LUIS A. CANCHOLA, Appellee.

 


On appeal from the 332nd District Court

of Hidalgo County, Texas.

 

O P I N I O N




Before Chief Justice Valdez and Justices Hinojosa and Rodriguez


Opinion by Chief Justice Valdez


 Luis A. Canchola brought suit against Wal-Mart Stores, Inc. ("Wal-Mart"), his former employer, for disability
discrimination and intentional infliction of emotional distress. According to Wal-Mart, Canchola was terminated for
violating the company's policy on sexual harassment. After trial, the jury found in favor of Canchola and awarded actual
damages, attorney's fees, and costs. The trial court entered judgment on the verdict and awarded prejudgment and
postjudgment interest. Wal-Mart appeals this judgment by three issues. We affirm.

Background


Canchola was employed as a deli manager at the Wal-Mart store in Mission, Texas. According to his supervisors,
Canchola was an excellent employee and the deli department ran very smoothly under his management. In July of 1993,
Canchola experienced chest pains, and underwent bypass surgery on six arteries. Following surgery, Canchola missed
work for thirteen weeks, then was allowed to return to work for four hours daily with restrictions that he forego heavy
lifting and handle only paperwork. Canchola gradually began increasing the hours he worked. In April of 1994, Canchola
again suffered chest pains when a bypassed artery became occluded. Following treatment, Canchola remained at home for a
month, then returned to work, again at a reduced schedule of four hours daily. According to Canchola, Wal-Mart's
management was very supportive during the period of time while Jessie Frias was store director.

However, in July of 1994, David Drastrata replaced Frias as store director of the Mission Wal-Mart. Canchola testified that
Drastrata's attitude toward him was hostile. Drastrata expressed dissatisfaction to Canchola that he was not present for store
managers' meetings, and asked Canchola to change his hours in order to attend the meetings. According to Canchola,
Drastrata also took unusual steps with regard to inspection and organization of the deli department. In fact, Donald E.
Light, the assistant store manager, told Canchola that someone was "out to get him" with regard to Drastrata's inspection of
the deli.

Drastrata testified that Canchola was fabricating a negative attitude on his part, and denied telling him that he was unhappy
that Canchola had been missing managers' meetings. When Drastrata took over the store, he was aware that Canchola had
a condition that precluded full-time employment; Drastrata did not recall when he learned that it was a heart condition. The
same month that Drastrata took over the Mission store, Drastrata's investigation of sexual harassment charges against
Canchola resulted in Canchola's termination.

Carmen Gonzalez, a part-time worker in the deli department under Canchola's supervision, initiated the complaint against
Canchola. Gonzalez and her family had been next door neighbors of Canchola and his family for approximately fifteen
years. Gonzalez testified that Canchola's sexual harassment of her began before she started working at Wal-Mart. Gonzalez
nevertheless approached Canchola for his assistance in procuring a job with Wal-Mart, and Canchola helped her obtain a
position in Wal-Mart's deli department. After working for Wal-Mart for an unspecified time, Gonzalez quit, then returned
to Wal-Mart some months later, again seeking and obtaining Canchola's assistance. 

During Gonzalez's second period of employment with Wal-Mart, Irene Flores, a support manager in the clothing
department, witnessed Canchola approach Gonzalez, stand close to her, and appear to be whispering in her ear. Flores
reprimanded Gonzalez for her "unprofessional" and "unladylike" behavior. In response, Gonzalez told Flores that
Canchola had been making advances toward her. Flores took Gonzalez to report her allegations to Drastrata. 

Gonzalez told Drastrata that Canchola frequently asked her out and requested sexual favors in return for full-time
employment in the deli department. At trial, Gonzalez testified that Canchola told her he would give her a full-time
position if she gave him something in return, and that the terminology he used could be interpreted in different ways. 
However, Donald E. Light, the assistant store manager, testified that, during the month before Gonzalez's accusation
against Canchola, Light had offered Gonzalez full-time work in the men's department, but Gonzalez declined the position
on grounds she did not want to leave the deli. According to Light, a full-time position in his department offered more
benefits than a similar job in the deli department. 

Gonzalez told Drastrata that Canchola also harassed Katherine and Graciela Solis, two sisters who worked in the "demo"
department providing samples of various products to shoppers. The Solis sisters accused Canchola of hugging them or
kissing them, and telling them that he would marry them if he were twenty years younger.

Following Drastrata's interview with Gonzalez, Drastrata and Mike Hawks, the assistant store manager, met with Canchola
and told him that he had been accused of harassment. Canchola was "totally shocked," denied any harassing behavior, and
proffered potential reasons for the accusations against him. Drastrata told Canchola he was going to investigate the
charges, suspended Canchola until further notice, and escorted him from the store. 

Drastrata testified that he was familiar with Wal-Mart's policy on sexual harassment and had received training on
conducting a sexual harassment investigation. According to Drastrata, his investigation into the charges against Canchola
complied with company policy. Drastrata interviewed the Solis sisters and a number of other individuals. Drastrata did not
recall the names of those he interviewed, how many female associates he talked to, or how many associates he interviewed
that worked in the deli department. Drastrata did not take any written notes documenting his investigation. Drastrata
testified that he did not procure statements from individuals who had no knowledge of harassment. According to Drastrata,
they had "nothing to offer." Drastrata obtained written statements from Carmen Gonzalez, Irene Flores, Graciela and
Katherine Solis, and Antonia "Toni" Cobios, a female subordinate of Canchola's who worked in the deli department.

These statements were the key to Wal-Mart's claim that it terminated Canchola for non-discriminatory reasons. At trial,
however, Cobios testified that Drastrata pressured her to provide a written statement. According to Cobios, Drastrata
instructed her to include specific factual allegations against Canchola in her statement despite her protestation that she
knew nothing about the matters he wanted her to include. Cobios subsequently wrote a letter to the president of Wal-Mart
explaining that she was pressured into providing a statement including false claims against Canchola. A copy of her letter,
introduced at trial, states that Canchola was a "very respectable" supervisor who gave his subordinates "space and respect." 
Cobios testified that the president of Wal-Mart replied to her letter, informing her that the company would investigate the
incident. Cobios ultimately testified that she thought the investigation against Canchola occurred "because they wanted to
fire Mr. Canchola." 

Drastrata testified that Cobios was lying when she said that he told her what to put in her statement. Both Drastrata and
Hawks testified that no one told any of the witnesses what to include in their statements. 

Cross-examination at trial revealed various weaknesses in Wal-Mart's investigation of the charges against Canchola. 
Drastrata did not know that Gonzalez had quit working at Wal-Mart for a period of time, then returned to work under
Canchola despite allegedly suffering harassment both prior to working at Wal-Mart and during each period of employment
with Wal-Mart. Drastrata was unaware that Gonzalez had been offered full-time employment in other departments. 
Drastrata was also unaware of personal and professional conflicts, unrelated to sexual harassment, between Canchola and
the Solis sisters. At trial, Hawks conceded that the written statements obtained during the investigation lacked basic
information as described in Wal-Mart's policies. 

Moreover, as described at trial, Wal-Mart's investigation apparently failed to incorporate exculpatory evidence. During the
investigation, Esmerelda Martinez, Graciela and Katherine Solis's supervisor, told Hawks that she had very little faith or
belief in the Solis sisters' accusations against Canchola. Similarly, Estela Guerra Perez, who served as Canchola's assistant
manager and worked with him on a regular basis, told Drastrata that she never observed Canchola do anything that she
considered harassing. Perez also testified that she served as a mediator for the employees, but none of the women that
accused Canchola of harassment ever approached her with complaints about Canchola.

The day following Gonzalez's complaint, Drastrata terminated Canchola. According to Drastrata, Wal-Mart's legal
department made the decision to terminate Canchola. However, in Hawks's words, they called Arkansas to "get approval"
to terminate Canchola. 

According to Wal-Mart's written policies, harassment "will not be tolerated" and "confidentiality will be maintained" to the
extent practicable. Any harassing behavior "will result in disciplinary action including up to termination of employment." 
Under the policy, if the objectionable conduct is harassment, "depending on the severity of the conduct, it will be deemed
to be gross misconduct, and termination will result." 

The policy requires all complaints to be investigated "thoroughly and promptly." The "investigation should be designed to
determine whether the allegations are true; whether the allegations, if true, constitute harassment; whether remedial action
is needed to deter the conduct; and to maintain confidentiality." The policy recommends, but does not require, that
complaints be made in writing, including the dates of the conduct, the identity of those involved, and the individual's
perception of the conduct. Store management is directed to interview "all parties necessary, including the person alleged to
have engaged in the conduct," to determine "what occurred, when, where, and who was involved," to evaluate "all relevant
information," and to consider materials carefully "to determine whether harassment occurred as alleged." The harassment
policy as written applies to all employees: associates, regular, temporary, full time, peak time, hourly and salaried.

According to Drastrata, there had to be a "documented" infraction before Wal-Mart could terminate an employee. At trial,
counsel asked Drastrata, "[i]f you were out to get Mr. Canchola or fire him for some reason, would you - isn't there other
ways you could do that besides building up some elaborate scheme about sexual harassment? I mean, aren't there other
[bases] you could have terminated him for?" Drastrata replied:

Well, I mean, at the time there wasn't anything out there. I mean, the deli-the out-of-date issue, that would have been the
only thing at the time that would have been significant that, you know, if left uncontrolled was serious enough to endanger,
you know, our customers' lives type deal. Yeah, we certainly would have addressed something like that.



Hawks testified that all forms of sexual harassment are equally serious, and that Wal-Mart has a zero tolerance policy for
sexual harassment. According to Hawks, any form of sexual harassment, whether committed by an associate or a member
of management, would result in termination.

Will Tippens, currently a district manager for Wal-Mart, subsequently replaced Drastrata at the Mission store. Tippens
testified that, in handling a separate sexual harassment claim, he demoted the employee accused of sexual harassment
rather than terminating him. According to Tippens, the distinction between Wal-Mart's handling of that claim and the claim
against Canchola was the result of the fact that salaried members of management are held to a higher standard than the
hourly employees. Tippens agreed that this dual standard was not evident in Wal-Mart's written policy. After conclusion of
the liability phase of the bifurcated trial, Tippens testified that Wal-Mart has a policy of not discriminating against disabled
people or those perceived to be disabled. However, upon examination, Tippens could provide only one example of a
disabled individual employed by Wal-Mart. Tippens testified that, following the incident with Canchola, Wal-Mart
changed its policies regarding the investigation of sexual harassment claims; its policies are now "totally different" and
improved.

In sum, Canchola testified that he was terminated because of his disability. In contrast, both Drastrata and Hawks testified
that they did not consider Canchola to be disabled; in fact, according to Drastrata, a disability was something like blindness,
or loss of a limb. 

Jurisdiction


In its first issue, Wal-Mart contends that the trial court did not have jurisdiction to enter judgment on Canchola's claims
because Canchola failed to prove that he had exhausted his administrative remedies under the Texas Commission on
Human Rights Act (the "TCHRA"). See Tex. Lab. Code Ann. § 21.001 - § 21.5566 (Vernon 1996 & Supp. 2001). 
Wal-Mart argues that Canchola had the burden of proof to establish at trial that he had exhausted his remedies. Wal-Mart
further contends that Canchola is unable to establish exhaustion of remedies because he failed to file a complaint with the
EEOC or TCHR prior to filing suit.

Canchola expressly pleaded that he had filed an original verified complaint with the Texas Commission on Human Rights
within 180 days of the occurrence at issue. Although Wal-Mart affirmatively pleaded that Canchola had not "fulfilled the
administrative conditions precedent to the filing of his claim," Wal-Mart did not file special exceptions, a plea to the
jurisdiction, a motion for summary judgment, or make any other efforts to present this jurisdictional issue to the trial court
at any time prior to the close of evidence. The issue first appears in the record after both parties had rested, but before the
case was submitted to the jury. In colloquy with the court, counsel for Wal-Mart expressly acknowledged its acceptance
that Canchola filed a complaint with the TCHR:

And there is one other incident -- one other thing that I would like to mention on the record, Your Honor, in connection
with this. I had asked Mr. Pena - Mr. Pena has plead that Mr. Canchola filed an EEOC or Texas Human Resources
Commissions complaint. I have never seen the complaint. Wal-Mart doesn't seem to have any record of it. I obviously
accept Mr. Pena's word for this. I don't know what is contained in that complaint, if there is one, and if Mr. Canchola is
alleging anything that falls without - or outside the boundaries of that complaint. I would also object to that as you are
confined to your EEOC complaints in any Title 7 type of complaint. 



(Emphasis added). In response, counsel for Canchola addressed Wal-Mart's renewed motion for a directed verdict, then
stated that "As to the TCHR charge, I have that at the office . . . it is in detailed interview more in response to all those
issues and the issue of disability has arisen. And I'll provide you a copy with that." The trial court denied Wal-Mart's
motion for directed verdict, and did not otherwise respond to counsel's exchange regarding the complaint. Wal-Mart did
not request that the issue of exhaustion of administrative remedies be submitted to the jury in the charge. The case was
submitted to the jury, and the jury found in favor of Canchola and awarded actual damages, attorney's fees, and costs.

Wal-Mart next raised the issue of exhaustion of remedies in its motion for judgment notwithstanding the verdict, or
alternatively, for new trial, arguing for the first time that Canchola failed to file a complaint. Although Wal-Mart did not
seek to qualify for a new trial based on newly discovered evidence, Wal-Mart's motion included two exhibits: a letter from
the EEOC to Wal-Mart's appellate counsel, and a TCHR intake questionnaire completed by Canchola. (1) The letter,
apparently sent by the EEOC in response to a query from Wal-Mart's appellate counsel, states that Canchola did not file a
complaint with the EEOC, but further states that "we were informed by Ms. Vicky Chesney that Mr. Canchola did complete
an intake questionnaire with the Texas Commission on Human Rights but that it was dismissed at the intake stage. You
may wish to contact Ms. Chesney . . . for additional information." Wal-Mart argues that this letter establishes that
Canchola did not file a complaint with the TCHRA. The intake questionnaire was sent to counsel for Wal-Mart by
Canchola's attorney. The record contains no other evidence pertinent to this jurisdictional issue. 

A person claiming a violation of the Texas Commission on Human Rights Act must first exhaust the act's administrative
remedies prior to bringing a civil action for such violation. Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 485 (Tex.
1991);Vincent v. W. Tex. State Univ., 895 S.W.2d 469, 473 (Tex. App.-Amarillo 1995, no writ). Initial resort to the
administrative remedies is mandated to ensure that "the Commission [has an] opportunity to investigate the allegations,
informally eliminate any discrimination, and minimize costly litigation." Vincent, 895 S.W.2d at 473. The exhaustion of
administrative remedies is mandatory; failing to exhaust administrative remedies creates a jurisdictional bar to the suit for
discrimination. Schroeder, 813 S.W.2d at 488. 

We begin our analysis of this issue with a discussion of Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000). In
Dubai, the Texas Supreme Court held that a plaintiff's failure to comply with statutory prerequisites will not deprive a trial
court of jurisdiction over a statutory cause of action. See id. At 76; see also Albertson's, Inc. v. Sinclair, 984 S.W.2d 958,
961 (Tex. 1999) (liberal construction accorded to worker's compensation law precludes construing a mandatory statutory
provision as "jurisdictional"). In so holding, the supreme court expressly overruled Mingus v. Wadley, 285 S.W. 1084
(Tex. 1926), to the extent that it held that a plaintiff's failure to comply with statutory prerequisites could deprive the trial
court of jurisdiction. Dubai, 12 S.W.3d at 76. Mingus specifically held that when a plaintiff seeks to recover under a purely
statutory cause of action in derogation of common law, subject matter jurisdiction is not presumed and the record must
affirmatively show as a jurisdictional fact that the plaintiff strictly complied with the statute's prescribed method of
transferring the controversy from the administrative body to the district court. Mingus, 285 S.W. at 1087. As noted in
Dubai, "the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the
tribunal lacked subject matter jurisdiction." Dubai, 12 S.W.3d at 76.

Thus, "[t]he right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been
said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it. Id. at 77
(quoting 21 C.J.S. Courts, § 16, at 23 (1990)). Therefore, while the parties have framed their argument in terms of whether
or not the district court had jurisdiction, those arguments could be considered instead in the context of whether Canchola
established his right under the TCHR to go forward with his suit. See id. 

Although Dubai appears to resolve the jurisdictional issue, the Texas Supreme Court subsequently addressed the doctrine
of exhaustion of remedies in Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan, 51 S.W.3d 293 (Tex. 2001). In Wilmer, the
issue considered by the court was "whether the trial court has jurisdiction over this suit for retaliatory discharge despite the
plaintiff's failure to exhaust her administrative remedies when the defendant did not tell her such remedies existed." Id. at
293. Without discussing Dubai, the supreme court held that a party cannot by his own conduct confer jurisdiction on a
court when none otherwise exists. Id. at 294-95. In reaching its decision, the court noted that the plaintiff therein admitted
"that she did not exhaust her administrative remedies and acknowledges that exhaustion of remedies is a prerequisite to the
trial court's jurisdiction in a case like this involving disputed fact issues." Id. at 294 (citations omitted).

However, we need not attempt to reconcile Dubai and Wilmer in the instant case because Wal-Mart's argument fails under
either analysis. Wal-Mart argues that the "trial court was without jurisdiction to enter judgment on Canchola's claim for
disability discrimination because Canchola failed to prove that he exhausted his administrative remedies." Under Dubai,
the failure to exhaust administrative remedies is not jurisdictional. See Dubai, 12 S.W.3d at 76-77. If, however, as
indicated by Wilmer, the failure to exhaust administrative remedies is jurisdictional, then Wal-Mart's argument fails to
consider and apply the appropriate standard of review. 

According to Wal-Mart, when state law requires a plaintiff to take preliminary administrative action prior to the filing of
suit, he has the burden of showing that such administrative prerequisites have been met. Wal-Mart argues that a plaintiff
cannot satisfy the exhaustion requirement by merely pleading compliance; rather, because the requirement is imposed by
statute, the plaintiff must affirmatively show compliance. In support of this proposition, Wal-Mart cites Permian Basin
Community Centers for Mental Health & Mental Retardation v. Johns, 951 S.W.2d 497, 502 (Tex. App.-El Paso 1997, no
writ), Methodist Hospital of Dallas v. Texas Workers' Compensation Comm'n, 874 S.W.2d 144, 149 (Tex. App.-Austin
1994, no writ), and Rodriguez v. American General Fire & Casualty Co., 788 S.W.2d 583, 585 (Tex. App.-El Paso 1990,
writ denied). Wal-Mart thus urges this Court to conclude that Canchola was required to put on evidence of exhaustion of
remedies during his case in chief. However, the cases cited by Wal-Mart stand for the proposition that exhaustion of
remedies is not an affirmative defense on which the defendant bears the burden of proof; rather, the plaintiff bears the
burden of proof. None of these cases address the plaintiff's evidentiary requirements for carrying the burden of proof on
exhaustion of remedies. Moreover, even if these cases were to stand for the proposition that a plaintiff cannot satisfy the
exhaustion requirement by merely pleading compliance, it is unclear that such a holding would survive the Texas Supreme
Court's subsequent decision in Dubai, where the court expressly disapproved its earlier decision in Mingusdistinguishing
statutory and common law causes of action and requiring strict compliance with statutory prerequisites. 

Rather, in considering subject matter jurisdiction, we look to the plaintiff's allegations in the pleadings, accept them as true,
and construe them in favor of the pleader. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). 
We are not required to look solely at the pleadings, but may consider evidence and must do so when necessary to resolve
the jurisdictional issue that was before the trial court. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000). 

Applying the foregoing standard, we accept Canchola's pleadings as true. Although Wal-Mart denied that Canchola had
"fulfilled the administrative conditions precedent to the filing of his claim," Wal-Mart has never pleaded nor argued that
Canchola's pleadings were fraudulent or made in bad faith. See Curbo v. State, 998 S.W.2d 337, 341 (Tex. App.-Austin
1999, no pet.); Flowers v. Lavaca Cty. Appraisal Dist., 766 S.W.2d 825, 827 (Tex. App.-Corpus Christi 1989, writ denied). 
Rather, as noted previously, Wal-Mart's trial counsel expressly disavowed such an allegation. In considering the issue of
jurisdiction, we might also consider the "evidence" regarding jurisdiction adduced by Wal-Mart in its motion for judgment
notwithstanding the verdict or motion for new trial. Blue, 34 S.W.3d at 555. Even assuming that these documents were
properly authenticated and presented to the trial court in admissible format, the letter from the EEOC and Canchola's intake
questionnaire, without more, fail to conclusively refute Canchola's pleading.

Wal-Mart argues that an unverified intake questionnaire does not constitute a formal charge, and further argues that
Canchola's questionnaire failed to reference disability discrimination, thus precluding him from relying on disability
discrimination as a basis for his lawsuit. Even if we were to ignore Canchola's pleadings and accept Wal-Mart's inference
from the EEOC letter that Canchola filed only an intake questionnaire rather than a verified complaint, we find that
dismissal at the intake stage after completion of an intake questionnaire could suffice to institute administrative review
under the TCHRA. 

Under section 21.201, a person claiming to be aggrieved by an unlawful employment practice may file a written complaint
under oath with the commission. Tex. Lab. Code Ann. § 21.201(a),(b) (Vernon 1996). However, a complaint may be
amended to cure technical defects or omissions, including a failure to verify the complaint or to clarify and amplify an
allegation made in the complaint. Tex. Lab. Code Ann. § 21.201(e) (Vernon 1996). In fact, a verified complaint relates
back to and satisfies any deficiencies in an unverified questionnaire filed within the applicable time limit. See Hennigan v.
I.P. Petroleum Co., 858 S.W.2d 371, 373 (Tex. 1993)(citingBrammer v. Martinnaire, Inc., 838 S.W.2d 844, 847 (Tex.
App.-Amarillo 1992, no writ)). 

Moreover, given that even the EEOC letter states that Canchola's action was "dismissed" at the intake stage, we cannot say
that Canchola did not exhaust his administrative remedies. If the Commission dismisses the complaint or has not filed suit
or negotiated a conciliation agreement within 180 days after the filing of the complaint, it must notify the complainant in
writing. See Tex. Lab. Code Ann. § 21.208 (Vernon 1996); Schroeder, 813 S.W.2d at 486; Eckerdt v. Frostex Foods, Inc.,
802 S.W.2d 70, 71 (Tex. App.-Austin 1990, no writ). The complainant may request from the Commission a written notice
of right to file a civil action. See Schroeder, 813 S.W.2d at 486; Tex. Lab. Code Ann. § 21.252 (Vernon 1996). 
Nevertheless, the failure to issue the notice of a complainant's right to file a civil action does not affect the complainant's
right to bring a civil action against the respondent. Tex. Lab. Code Ann. § 21.252(d) (Vernon 1996); Eckerdt, 802 S.W.2d
at 71.

A review of Canchola's intake questionnaire reveals that Canchola indicated race and age were the reasons Wal-Mart
discriminated against him. Wal-Mart thus argues that Canchola's claim for disability discrimination is precluded under the
TCHRA. A lawsuit under the Texas Commission on Human Rights Act is limited to claims made in a discrimination
charge and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the
charge. Thomas v. Clayton Williams Energy, 2 S.W.3d 734, 738 (Tex. App.-Houston [14th Dist.] 1999, no pet.); cf.
Elgaghil v. Tarrant County Junior Coll., 45 S.W.3d 133, 142 (Tex. App.-Fort Worth 2000, pet. denied) (lawsuit limited to
claims made in charge and "any kind of discrimination like or related to the charge's allegations"). Wal-Mart has not
shown that disability due to a heart condition is not factually and reasonably related to age. We conclude that Canchola
established his right under the TCHRA to go forward with his lawsuit against Wal-Mart. 

We overrule Wal-Mart's first issue.

Standards of Review


Wal-Mart's remaining two issues require the Court to review the legal and factual sufficiency of the jury's findings. In
considering no evidence or legal sufficiency points of error, we consider only the evidence and inferences from the
evidence favorable to the decision of the trier of fact, and disregard all evidence and inferences to the contrary. See State
Farm Fire & Cas. Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998); Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499
(Tex. 1995). If more than a scintilla of evidence supports the challenged finding, the no evidence challenge must fail. See
Gen. Motors Corp. v. Sanchez, 997 S.W.2d 584, 588 (Tex. 1999);Mayberry v. Tex. Dep't of Agric., 948 S.W.2d 312, 316
(Tex. App.-Austin 1997, pet. denied).

In considering a factual sufficiency point, we may not substitute our judgment for that of the trier of fact, but must assess all
the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly shows bias, or is so
against the great weight and preponderance of the evidence as to be manifestly unjust. See Maritime Overseas Corp. v.
Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

In discrimination cases that have not been fully tried on the merits, Texas courts apply the McDonnell Douglas or Burdine
burden-shifting analysis established by the United States Supreme Court. See Reeves v. Sanderson Plumbing Prods., Inc.,
120 S.Ct. 2097, 2106 (2000)(discussing McDonnell Douglas Corp. v. Green, 411 U.S. 729, 802-03 (1973), and Tex. Dep't
of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)); M. D. Anderson Hosp. v. Willrich, 28 S.W.3d 22, 24 (Tex.
2000)(per curiam); Texas Dept. of Human Servs. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995).

Under this burden-shifting analysis, the plaintiff has the initial burden of proving a prima facie case of discrimination by a
preponderance of the evidence. Stanley Stores, Inc. v. Chavana, 909 S.W.2d 554, 559 (Tex. App.-Corpus Christi 1995,
writ denied); Adams v. Valley Fed. Credit Union, 848 S.W.2d 182, 186 (Tex. App.-Corpus Christi 1992, writ denied). If
the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate,
nondiscriminatory reason for the employee's discharge. Stanley Stores, 909 S.W.2d at 560; Adams, 848 S.W.2d at 187-88. 
If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate
reasons offered by the defendant were not its true reasons, but were rather a pretext for discrimination. Stanley Stores, 909
S.W.2d at 560; Adams, 848 S.W.2d at 187-88. Despite the shifting burden of proof, the plaintiff at all times retains the
ultimate burden of persuading the trier of fact. Stanley Stores, 909 S.W.2d at 560; Adams, 848 S.W.2d at 187-88.

However, when a case has been fully tried on its merits, as here, we do not focus on the burden shifting scheme described
above. See, e.g., Rubenstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 402 (5th Cir. 2000), cert. denied, 121 S.Ct.
1393 (2001). Once the case has been submitted to the jury, the adequacy of a party's showing at any particular stage of the
McDonnell Douglas analysis is unimportant. Travis v. Bd. of Regents of Univ. of Tex., 122 F.3d 259, 263 (5th Cir. 1997). 
Instead, we inquire whether the record contains legally and factually sufficient evidence to support the jury's ultimate
findings. Rutherford v. Harris County, Tex., 197 F.3d 173, 180-81 (5th Cir.1999); Smith v. Berry Co., 165 F.3d 390, 394
(5th Cir. 1999). Fundamentally, Canchola must show that disability discrimination was a motivating factor in Wal-Mart's
decision to terminate him. See Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2001) (applying "motivating
factor" as standard of causation in TCHRA unlawful practice claims); see also Rutherford, 197 F.3d at 180-81; Travis, 112
F.3d at 263.

Disability as Motivating Factor


In its second issue, Wal-Mart argues that Canchola failed to present legally or factually sufficient evidence to support the
jury's finding that disability was a motivating factor in Wal-Mart's decision to discharge him. Wal-Mart argues that
Canchola was not disabled nor was he regarded as being disabled. Wal-Mart next argues that Canchola produced no
evidence that Wal-Mart's stated reason for his termination was pretextual, or that a real or perceived disability was a
motivating factor in its decision to terminate him.

Canchola brought suit against Wal-Mart under the Texas Commission on Human Rights Act. See Tex. Lab. Code Ann. §
21.001 - § 21.556 (Vernon 1996 & Supp. 2001). The act prohibits an employer from discharging or otherwise
discriminating against an employee in any way based on the employee's disability. Tex. Lab. Code Ann. § 21.051(a)
(Vernon 1996). The act provides that an individual may be classified as disabled under any one of the three definitions of
the term contained in the act. Tex. Lab. Code Ann. §21.002(6) (Vernon 1996). A "disability" is defined as (1) a physical
or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such
an impairment; or (3) being regarded as having such an impairment. Id. A "major life activity" is considered to be
something akin to caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or
working. See Garcia v. Allen, 28 S.W.3d 587, 596 (Tex. App.-Corpus Christi 2000, pet. denied); Hartis v. Mason &
Hanger Corp., 7 S.W.3d 700, 703 (Tex. App.-Amarillo 1999, no pet.). 

The determination of whether an individual is disabled is necessarily fact intensive. Garcia, 28 S.W.3d at 596; Primeaux v.
Conoco, Inc., 961 S.W.2d 401, 404 (Tex. App.-Houston [1st Dist.] 1997, no writ). In determining whether an individual is
disabled in a major life activity, we consider: (1) the nature and severity of the impairment; (2) the duration or expected
duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of
or resulting from the impairment. Garcia, 28 S.W.3d at 596; Norwood v. Litwin Eng'rs & Constructors, Inc., 962 S.W.2d
220, 224 (Tex. App.-Houston [1st Dist.] 1998, pet. denied).

Canchola offered evidence that he is disabled because his heart condition substantially limits him in the major life area of
work, or alternatively, that Wal-Mart perceived him as having such an impairment. When the impaired major life activity 
is the ability to work, the statute requires the plaintiff to show substantial limitation by proving, at a minimum, that the
plaintiff is unable to work in a broad class of jobs. See Sutton v. United Airlines, Inc., 527 U.S. 471, 491-92 (1999); Kiser
v. Original, Inc., 32 S.W.3d 449, 453 (Tex. App.-Houston [14th Dist.] 2000, no pet.); Garcia, 28 S.W.3d at 599-600. The
inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 
Sutton, 527 U.S. at 491-92. 

In the instant case, the record contains evidence that Canchola suffered an impairment under the TCHRA. Canchola
underwent a sextuple bypass in July of 1993. He returned to work thirteen weeks after his surgery on a reduced schedule of
four hours per day. In April of 1994, Canchola suffered additional heart problems which required him to miss an additional
month of work. At the end of the month, Canchola returned to work, again on a reduced schedule of four hours daily. 
Canchola's work activities were limited to paperwork; his subordinates handled all of his other duties as a deli manager.

The record further contains evidence that Canchola's impairment constituted a substantial limitation on his ability to work. 
With regard to the major life activity of working, the ADA regulations explain that the term "substantially limits" means:

[S]ignificantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as
compared to the average person having comparable training, skills, and abilities. The ability to perform a single, particular
job does not constitute a substantial limitation in the major life activity of working.



29 C.F.R. §1630.2(j)(3) (1996); see Primeaux, 961 S.W.2d at 405. Factors to consider in determining whether an
individual is substantially limited in working include, but are not limited to, the geographical area to which the person has
reasonable access; the job from which the individual has been disqualified because of an impairment, and the number and
types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the
individual is also disqualified because of the impairment; and the number and types of other jobs not utilizing similar
training, knowledge, skills, or abilities, within that geographical area from which the individual is also disqualified because
of the impairment. 29 C.F.R. §1630.2(j)(3). For example, an individual who has a back condition that prevents the
individual from performing any heavy labor job would be substantially limited in the major life activity of working because
the individual's impairment eliminates his or her ability to perform a class of jobs. This is so even if the individual is able
to perform jobs in another class, for example, the class of semi-skilled jobs. 29 C.F.R. §1630.2, App., §1630(j). 

At the time of his initial surgery in 1993, Canchola was forty-seven years old, had a limited educational background, and
had worked in the food business for five years. After his termination by Wal-Mart, Canchola worked for the Boys & Girls
Club of McAllen, at a convenience store, and as a custodian for a local church. Canchola's testimony, coupled with
evidence of his physical impairment and limited education, constitute more than a scintilla of evidence that Canchola was
impaired, and that Canchola's impairment constituted a substantial limitation on his ability to work. See Gen. Motors
Corp., 997 S.W.2d at 588. Moreover, based on the foregoing, the jury's finding that Canchola was disabled is not so
against the great weight and preponderance of the evidence as to be manifestly unjust. See Maritime Overseas Corp., 971
S.W.2d at 406-07.

Wal-Mart next argues that Canchola produced legally and factually insufficient evidence that Wal-Mart's stated reason for
his termination was pretextual, or that a real or perceived disability was a motivating factor in its decision to terminate him.
Members of Wal-Mart's management testified that they did not consider Canchola to be disabled. Rather, according to
management, Canchola was terminated as a result of the sexual harassment claims made against him. Specifically,
Wal-Mart relies on Gonzalez's claim that Canchola had requested sexual favors from her in exchange for full-time
employment in the deli. Wal-Mart further relies on Graciela and Katherine Solis's claims that Canchola harassed them both
verbally and physically. Drastrata, Hawks, and Light generally testified that they found Canchola's accusers to be credible
and believable. At trial, Canchola admitted that he tends to hug people and call them "honey" or "baby". 

However, based on the evidence adduced at trial, the jury may have concluded that Wal-Mart's stated reason for terminating
Canchola was a pretext for disability discrimination. The jury heard evidence that Wal-Mart's investigation of the
harassment charges was incomplete or biased, that Wal-Mart pressured a witness into falsifying a statement, and that
Wal-Mart failed to uniformly implement its harassment policy. The jury also heard both Cobios and Light testify that they
believed Canchola was being unfairly targeted: according to Light, someone was "out to get" Canchola, and Cobios
testified that she believed Canchola was being investigated "because they wanted to fire Mr. Canchola."

As an initial matter, Drastrata's investigation of the charges against Canchola failed to comply with the Wal-Mart mandate
for a "thorough" investigation "designed to determine whether the allegations are true." Drastrata was unaware that
Gonzalez had returned to work at Wal-Mart under Canchola despite his alleged harassment, was unaware that Gonzalez
had been offered full-time employment in other departments, and was unaware of Graciela's fight and potential
explanations for her accusation against Canchola. There is sufficient evidence to allow the jury to conclude that Drastrata's
investigation was calculated not to determine the truth of the allegations against Canchola, but instead to substantiate the
allegations. As noted previously, Drastrata failed to obtain any exculpatory statements from witnesses on the grounds that
they "had nothing to offer." And, despite the fact that Wal-Mart's policy did not require written complaints, there is
evidence that Drastrata and Hawks pressured the witnesses to complete written statements against Canchola. In fact,
testimony from Cobios indicated that Drastrata instructed her to falsify her statement against Canchola.

Moreover, the evidence adduced at trial indicated that Wal-Mart failed to uniformly implement its policy regarding
harassment. Under the written policy, any harassing behavior by any Wal-Mart employee would "result in disciplinary
action including up to termination of employment" depending on the severity of the conduct. However, Hawks testified that
Wal-Mart had a "zero tolerance" policy for sexual harassment, that all forms of sexual harassment were equally serious, and
any form of sexual harassment by any employee would result in termination. In further contrast to Wal-Mart's written
policy and in contradiction to Hawk's testimony, Tippens testified that members of Wal-Mart's management were held to a
higher standard than salaried employees, and thus he demoted an individual accused of sexual harassment rather than
terminating him. Finally, there was testimony at trial that one of Canchola's accusers, Graciela Solis, had previously
engaged in a fight at the store, although she was not terminated in accordance with Wal-Mart's policy requiring termination
for the offense of fighting.

While we agree with Wal-Mart that there was some evidence that it had a legitimate, non-discriminatory motive for
terminating Canchola, the jury was the sole evaluator of the witnesses' credibility and entitled to resolve conflicts in the
testimony as it saw fit. Silcott, 721 S.W.2d at 293; Gorges Foodservice, Inc., 964 S.W.2d at 666. The jury's verdict was
supported by more than a scintilla of evidence, and was not so against the great weight and preponderance of the evidence
as to be manifestly unjust. Maritime Overseas Corp., 971 S.W.2d at 406-07. We conclude that Canchola presented legally
and factually sufficient evidence to support the jury's finding that Canchola's disability was a motivating factor in
Wal-Mart's decision to discharge him.

We overrule Wal-Mart's second issue. 

Intentional Infliction of Emotional Distress


In its third issue, Wal-Mart contends that the evidence was legally or factually insufficient to support the jury's finding that
it intentionally inflicted emotional distress on Canchola. To recover damages for intentional infliction of emotional
distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was
extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress
suffered by the plaintiff was severe. Morgan v. Anthony, 27 S.W.3d 928, 928 (Tex. 2000). The court's charge comported
with this standard.

Wal-Mart first argues that its conduct was not extreme and outrageous. Extreme and outrageous conduct is conduct "so
outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement (second) of Torts section 46 cmt. d
(1965)). Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct. GTE
Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612 (Tex. 1999). Similarly, mere insults, indignities, threats, annoyances, petty
oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct. Id. 

A claim for intentional infliction of emotional distress does not lie for ordinary employment disputes. Id. at 613; see City
of Midland v. O'Bryant, 18 S.W.3d 209, 217 (Tex. 2000). Rather, to establish a cause of action for intentional infliction of
emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside
the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct. GTE Southwest, Inc.,
998 S.W.2d at 612. It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be
regarded as so extreme and outrageous as to permit recovery. Id. at 616. When reasonable minds may differ, however, it is
for the jury, subject to the court's control, to determine whether, in the particular case, the conduct has been sufficiently
extreme and outrageous to result in liability. Id.

Wal-Mart contends that the evidence establishes nothing more than an ordinary employment dispute. However, the jury
heard evidence suggesting that Wal-Mart's investigation of the charges against Canchola was incomplete and biased. The
jury also heard conflicting evidence about Wal-Mart's policy on harassment, and heard that Wal-Mart failed to uniformly
implement its policy regarding sexual harassment by demoting one individual accused of harassment, yet terminating
Canchola. Most significantly, the jury had before it evidence that Drastrata instructed a witness to falsify her statement
implicating Canchola. Under these circumstances, we conclude that the evidence before the jury was legally and factually
sufficient to support the jury's finding of extreme and outrageous conduct on the part of Wal-Mart.

Next, Wal-Mart argues that any distress Canchola may have suffered was not severe. Emotional distress includes all highly
unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry. GTE Southwest,
Inc., 998 S.W.2d at 618; Toles v. Toles, 45 S.W.3d 252, 262 (Tex. App.-Dallas 2001, pet. denied). Severe emotional
distress is distress that is so severe that no reasonable person could be expected to endure it. GTE Southwest, Inc., 998
S.W.2d at 618. In considering Canchola's emotional distress, we consider evidence of his distress in the days and months
following the accident, as well as evidence concerning Canchola's emotional state during the harassment investigation. See
Morgan, 27 S.W.3d at 931. 

Canchola was hospitalized due to stress at least twice following his termination. Canchola testified that his termination was
"really, really devastating." He talked to his wife about it and prayed about it. He sought guidance from his minister and a
friend.

Yolanda Canchola, appellee's wife of twenty-nine years, testified that the termination caused her husband, and in fact, her
whole family, problems. According to Mrs. Canchola, the termination took Canchola's respect away. Canchola was
"totally shocked" by the accusation, and testified that he was not given an opportunity to defend himself. 

This evidence is legally and factually sufficient to support the jury's finding that Canchola suffered from severe emotional
distress.

We overrule Wal-Mart's third issue. 

 Having overruled each of Wal-Mart's issues on appeal, we affirm the judgment of the trial court.


 

 ROGELIO VALDEZ

 Chief Justice



Publish.

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 29th day of November, 2001.

 

1. In connection with Wal-Mart's motion, we note that the record on appeal shows that both the letter and questionnaire
purport to be accompanied by affidavits. However, the entirety of the affidavit allegedly accompanying the letter is
missing, save for the signature page, and the affidavit accompanying the questionnaire is not executed. In fact, the record
copy of Wal-Mart's motion is unsigned.