# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 01-50943
(Summary Calendar)

LUIS VARGAS,                                              Plaintiff-Appellant,

versus

VF JEANSWEAR INC.,                                       Defendant Appellee.

Appeal from the United States District Court
for the Western District of Texas
(No. EP-00-CV-351-E)

June 20, 2002

Before WIENER, BENAVIDES and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellant Luis Vargas ("Vargas") appeals from the district court's grant of summary

judgment in favor of appellee VF Jeanswear, Inc. ("Jeanswear"). For t he following reasons, we

AFFIRM.

## FACTUAL AND PROCEDURAL HISTORY

---

[*] Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be published and is not
precedent except under the limited circumstances set forth in 5th CIR. R. 47.5.4.

Vargas, a Costa Rican male, began working at Jeanswear as a sewing machine operator in October of 1992. On April 10, 1999, Vargas sustained a work-related wrist injury. A few days later, Vargas submitted a note from his doctor stating that he was "released to modified duty, 50%." Accordingly, he requested that he be placed on light duty work. This request was denied at first and, as a result, Vargas did not work for three months. During this time, he collected workers' compensation benefits. Eventually, Vargas was placed back in his old position, but was allowed to perform his work at a significantly slower pace. Vargas's base pay was the same and he was allowed to miss work to attend physical therapy sessions.

On December 10, 1999, Vargas took a leave of absence so that he could undergo surgery. He returned to work on March 13, 2000 and was placed on light duty work separating rivets and matching UPC labels and size stickers. On April 3, 2000, he obtained a doctor's release allowing him to return to work as a sewing machine operator without any restrictions or modifications. He resigned two days later.

Vargas filed suit in state court alleging claims under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. § 21.051 (Vernon 1996). Specifically, he alleged national origin, sex, and disability discrimination. He also claimed that Jeanswear unlawfully retaliated against him for filing various charges of discrimination with the Equal Employment Opportunity Commission and the Texas Human Rights Commission and for filing a workers' compensation claim with the Texas Workers' Compensation Commission. Finally, he asserted a claim for intentional infliction of emotional distress. Jeanswear asserted diversity jurisdiction and removed the case to federal court. Vargas filed a motion to remand, which was denied. Subsequently, Jeanswear filed a motion for summary judgment, which the court granted in its entirety. Vargas appeals.

<u>STANDARD OF REVIEW</u>

A grant of summary judgment is reviewed *de novo*. <u>Norman v. Apache Corp.</u>, 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

<u>DISCUSSION</u>

The TCHRA prohibits employment discrimination in connection with the compensation, terms, conditions, or privileges of employment. TEX. LAB. CODE ANN. § 21.051 (Vernon 1996). Because the TCHRA tracks Title VII , Texas courts consider analogous federal case law in the interpretation and application of the TCHRA. <u>Schroeder v. Tex. Iron Works, Inc.</u>, 813 S.W.2d 483, 285 (Tex. 1991); <u>see also</u> <u>Graves v. Komet</u>, 982 S.W.2d 551, 554 (Tex. App. 1998).

Because Vargas offers no direct proof of discrimination, the framework set forth in <u>McDonnell Douglas Corp. v. Green</u> is applicable. 411 U.S. 792, 802-04 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination. <u>Id.</u> at 802. To establish a prima facie case, an individual must establish that (1) he was a member of a protected class, (2) he was qualified for the position at issue, (3) he suffered an adverse employment action, and (4) that others similarly situated were more favorably treated. <u>Id.</u> If a plaintiff succeeds in showing a prima facie case, the defendant must then provide a legitimate, non-discriminatory reason for the adverse employment action. <u>Id.</u> Lastly, if the employer meets this burden, the plaintiff must demonstrate, by a preponderance of the evidence, that the proffered reason was a pretext for discrimination. <u>Id.</u> at 804.

3

## I.  Sex Discrimination

There is no dispute that Vargas satisfies the first two prongs of a prima facie case under the McDonnell Douglas framework.  As for the third prong, Vargas contends that he suffered an adverse employment action when he was not immediately assigned to light duty work.  With regard to the fourth prong, Vargas asserts that a similarly situated female, Ms. Nadia Molinar ("Molinar"), was treated more favorably because she was assigned to light duty work immediately following her injury.

The district court concluded that Vargas could not establish a prima facie case of discrimination because he could not show an adverse employment action or that Jeanswear treated him differently than any female employee.  We agree.

Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.  Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000).  Vargas complains that he was not reassigned immediately, and that when he was reassigned, he did not receive the same position as Molinar.  The record supports the view, however, that Vargas was not immediately reassigned because Jeanswear sought clarification from Vargas's doctor as to what kinds of actions Vargas could perform.  Vargas's doctor did not respond despite Jeanswear's active attempts to contact him.  Once a response was received, Vargas's work duties were modified to accommodate him.

Moreover, Vargas cannot show that Molinar was similarly situated to him.  There is no evidence that Jeanswear was confused about Molinar's medical restrictions or that her doctor failed to immediately provide medical advice as to her limitations.  Additionally, the fact that Molinar was given different light duty work than Vargas is of no import.  Jeanswear was not required to give Molinar and Vargas the exact same position.  There is no support in the case law for this proposition,

4

nor is there support in the record showing that Molinar and Vargas suffered from the same impediments to performing their jobs.

## II.     National Origin Discrimination

Vargas must satisfy the same burden of proof with respect to his claim for national origin discrimination. We agree with the district court that this claim fails for the same reasons that Vargas's sex discrimination claim fails. Vargas alleges that a male Mexican-American employee, Mr. Torres, was treated more favorably than him. Specifically, Vargas asserts that Torres was immediately placed in light duty work after he was injured, whereas he was forced to wait for a light duty position. He contends that the delay was due to his Costa Rican descent. Vargas again offers no evidence to dispute Jeanswear's contention that it took them longer to place Vargas in a position because his doctor failed to respond to requests for further information. Moreover, there is no support in the record for Vargas's contention that Mr. Torres was similarly situated to him. Further, for the reasons already discussed, this claim also fails because Vargas has not shown that he suffered an adverse employment action.

## III.     Disability Discrimination

An employer commits an unlawful employment practice if, because of disability, the employer discriminates against an individual in connection with employment. TEX. LAB. CODE ANN. § 21.051. A plaintiff must show that his disability was a "motivating factor" for an employment practice, regardless of how many factors influenced the decision. Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2000) ("'[A] motivating factor' [is] the . . . standard of causation in a TCHRA unlawful employment practice claim.").

5

To set up a prima facie case of discrimination, a plaintiff must make a threshold showing that he has a disability. Garcia v. Allen, 28 S.W.3d 587, 596 (Tex. App. 2000). An individual can be classified as disabled under any one of the three definitions of the term contained in the TCHRA. Id. Under the statute, a person is defined as disabled if he either (1) is actually disabled, (2) is regarded as being disabled, or (3) has a record of being disabled. TEX. LAB. CODE ANN. § 21.002(6) (Vernon 1996). For all three definitions, the word "disabled" is defined as having a mental or physical impairment that substantially limits at least one major life activity. Id. A "major life activity" is considered akin to "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Garcia, 28 S.W.3d at 596 (quoting 29 C.F.R. § 1630.2(i)). When the impaired major life activity is the ability to work, the statute requires the plaintiff to show a substantial limitation by proving, at a minimum, that the plaintiff is unable to work in a broad class of jobs. Kiser v. Original, Inc., 32 S.W.3d 449, 453 (Tex. App. 2000); Garcia, 28 S.W.3d at 599-600. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Wal-Mart Stores, Inc. v. Canchola, 64 S.W.3d 524, 538 (Tex. App. 2001).

The district court correctly concluded that Vargas's disability discrimination claim is meritless. Vargas introduced absolutely no evidence that he could not continue to work at another position. Moreover, the record shows that Vargas returned to work at his original position after his surgery and that he no longer required any accommodations. As such, Vargas is not disabled as a matter of law and the district court properly granted summary judgment on this claim. Kiser, 32 S.W.3d at 453.[1]

---

[1] Vargas makes no argument that he was "regarded as" disabled within the meaning of the statute.

IV.     Retaliation Under § 21.055 of the TCHRA

The elements of a TCHRA retaliation claim are: (1) the employee engaged in a protected activity, (2) the employer took an adverse employment action against the employee, and (3) the employer took the adverse action based on the employee's engagement in the protected activity. Mayberry v. Tex. Dep't of Agriculture, 948 S.W.2d 312, 315 (Tex. App. 1997). The TCHRA protects an employee from retaliation or discrimination by an employer because the employee "opposed a discriminatory practice." TEX. LAB. CODE ANN. § 21.055(1) (Vernon 1996).

We agree with the district court that for the reasons already elaborated on, Vargas cannot establish a retaliation claim because he cannot show that he has suffered an adverse employment action.

V.     Retaliation Under § 451.001 of the Texas Labor Code

Section 451.001 provides that it is unlawful to "discharge or in any other manner discriminate against an employee because the employee has . . . filed a workers' compensation claim in good faith." TEX. LAB. CODE ANN. § 451.001 (Vernon 1996). It is incumbent upon the plaintiff to put forth evidence establishing a causal connection between the filing of a workers' compensation claim and the complained of employment action. Swearingen v. Owens-Corning Fiberglas Corp., 968 F.2d 559, 563 (5th Cir. 1992). There is very little in the summary judgment record establishing a causal link between Vargas's filing of a workers' compensation claim and the actions taken by Jeanswear. Moreover, there is no support in the record for the contention that Vargas suffered from discrimination. However, even if we assume that Vargas has established a causal link, and that Vargas was discriminated against, Jeanswear may rebut the claim of retaliation by showing that there was a legitimate, non-discriminatory reason for its action. Id.

7

Jeanswear asserts that it did not immediately place Vargas in a modified position because it was awaiting further instruction from Vargas's doctor. The record supports this view and Vargas has not introduced any evidence tending to disprove the sincerity of Jeanswear's actions. As such, we agree with the district court that there is no genuine issue of material fact. The district court correctly granted Jeanswear summary judgment on this claim.

## VI.    Intentional Infliction of Emotional Distress

Under Texas law, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999).

Vargas contends that his supervisor, Carlos Betancourt ("Betancourt") (1) threatened Vargas with disciplinary action if he refused to accompany him to the bathroom, (2) told Vargas he had a "sucker's mouth," (3) accused Vargas of being homosexual, and (4) threatened to "blackball" Vargas. In addition, he claims that Betancourt grabbed him inappropriately between his legs. Vargas also alleges that another supervisor, Sylvia Reyes, mocked him about his injury and accused him of theft.

To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994) (quoting Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993)). Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct. Natividad, 875 S.W.2d at 699. Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not

8

rise to the level of extreme and outrageous conduct. Porterfield v. Galen Hosp. Corp., 948 S.W.2d 916, 920 (Tex. App. 1997).

In determining whether certain conduct is extreme and outrageous, courts consider the context and the relationship between the parties. GTE Southwest, 998 S.W.2d at 612. The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Id. Texas courts have adopted a strict approach to intentional infliction of emotional distress claims arising in the workplace. See, e.g., Miller v. Galveston/Houston Diocese, 911 S.W.2d 897, 900-01 (Tex. App. 1995); Amador v. Tan, 855 S.W.2d 131, 135 (Tex. App. 1993); Horton v. Montgomery Ward & Co., 827 S.W.2d 361, 369 (Tex. App. 1992) ("Incidents in which a Texas court has determined the conduct to be extreme and outrageous in the employer/employee setting are few."). The Texas courts rely on the fact that, to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees. Johnson v. Merrell Dow Pharms.,Inc., 965 F.2d 31, 34 (5th Cir. 1992). Given these considerations, Texas courts have held that a claim for intentional infliction of emotional distress does not lie for ordinary employment disputes. Miller, 911 S.W.2d at 900-01. The range of behavior encompassed in "employment disputes" is broad, and includes at a minimum such things as criticism, lack of recognition, and low evaluations. See, e.g., Ulrich v. Exxon Co., U.S.A., 824 F. Supp. 677, 687 (S.D. Tex. 1993). Thus, to establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct. Ramirez v. Allright Parking El Paso, Inc., 970 F.2d 1372, 1376 (5th Cir. 1992) (requiring

9

employee to show conduct "elevating [the employer's] actions above those involved in an 'ordinary employment dispute' "); see also Porterfield, 948 S.W.2d at 920-21 ("Only in the most unusual of employment cases does the conduct move out of the 'realm of an ordinary employment dispute' and into the classification of extreme and outrageous.").

Based on these principles, the district court concluded that Vargas's allegations did not rise to the level of extreme and outrageous conduct required under Texas law.  We agree.

In Foye v. Montes,   9 S.W.3d 436 (Tex. App. 1999), Montes's boss, Foye, called her at home repeatedly.  During one call, he allegedly asked her on a date.  During another call, he asked her if she slept with a bra on.  Other incidents that Montes complained about included Foye's recommendation of two movies to her.  One was *The Bounty* and the other was *Like Water for Chocolate*. According to Montes, watching the latter movie caused her severe emotional distress because it depicted sex and nudity.  Also, on a couple of occasions, Foye asked Montes to put gas in his car.  She testified there were love notes  left in the car for her to see.  One such note said "you drive me crazy," and another had the word "sex" or "sexual" in it.  Id. at 439.  Foye asked Montes not to wear lipstick because he "didn't like the taste" of it.  Id.  On another occasion, Foye told Montes that she had a "heart-shaped ass."  Id.  On still another occasion, Foye slapped Montes "on the rear end."  Id.  At a Christmas party, Montes claimed that Foye, while sitting next to her, "reached over and put his hand on [her] thigh and said, 'would you like to go have a drink or something.' " and said, "'a lot can be done in an hour and a half.' "  Id.  Montes testified that she was very upset and felt "violated."  Id.  Subsequently, Montes was terminated.  Later, she was diagnosed as suffering from "severe emotional distress."  Id. at 440.

The court noted that "[o]nly in the most unusual of employment cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous." Id. The court concluded that, "we fail to see the extreme and outrageous nature of Foye's behavior. Without a doubt, his behavior could be described as rude, offensive, and annoying. However, it falls short of the necessarily high standard for intentional infliction of emotional distress." Id.

Vargas has not cited any cases that support his position, or that tend to show that conduct similar to that which Vargas endured is actionable under Texas law. We do not doubt that Vargas may have experienced some indecencies or rudeness, but given the strict standard for liability under Texas law, we are unable to find that a genuine issue of material facts exists on Vargas's claim of intentional infliction distress.

CONCLUSION

Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Jeanswear.

AFFIRMED.

11